*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0310p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RUSSELL MARCILIS II, FELICIA MARCILIS, JASMINE MARCILIS, RUSSELL MARCILIS I, and MARIE MARCILIS,

> *Plaintiffs-Appellants*,

*v.*

TOWNSHIP OF REDFORD, BRIAN JONES, ERIC WOODALL, ERIC GILLMAN, JOHN BUTLER, KEVIN JEZIOROWSKI, WILLIAM HAND, BRAD BOYLE, DAVE LIVINGSTON, and CHRIS RICHARDSON,

> *Defendants-Appellees.*

No. 11-1073

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:09-cv-11624—Lawrence P. Zatkoff, District Judge.

Argued: April 19, 2012

Decided and Filed: September 6, 2012

Before: MARTIN, SUTTON, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Shawn C. Cabot, CHRISTOPHER TRAINOR & ASSOCIATES, White Lake, Michigan, for Appellants. Reginald Maurice Skinner, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Joseph Nimako, CUMMINGS, McCLOREY, DAVIS & ACHO, P.C., Livonia, Michigan, Linda D. Fegins, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for Appellees **ON BRIEF:** Shawn C. Cabot, Christopher J. Trainor, CHRISTOPHER TRAINOR & ASSOCIATES, White Lake, Michigan, for Appellants. Reginald Maurice Skinner, Richard Montague, Andrew D. Silverman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Joseph Nimako, CUMMINGS, McCLOREY, DAVIS & ACHO, P.C., Livonia, Michigan, Linda D. Fegins, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for Appellees.

1

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Circuit Judge.  This is a civil rights case arising from federal task force narcotics raids conducted at two homes by Drug Enforcement Administration agents and police officers from Redford Township, Michigan, and Detroit, Michigan.  The plaintiffs—members of the Marcilis family who were residents of the searched homes—filed a civil rights action pursuant to 42 U.S.C. § 1983 alleging that: (1) the federal agents and police officers engaged in excessive force, illegal search and seizure, false arrest, malicious prosecution, and retaliation in violation of the First Amendment; (2) Redford Township failed to train and supervise its police officers; and (3) the federal agents and police officers violated the "knock and announce" rule.  After dismissing all of the claims against the federal agents, the district court granted the police officers' motion for summary judgment on all claims except the alleged violation of the "knock and announce" rule.  The Marcilises appeal the district court's judgments dismissing the claims against the federal agents; denying the Marcilises' motion for adjournment of the scheduling order; and granting the police officers' motions for summary judgment.  For the following reasons, we **AFFIRM** the judgments of the district court.

I.

On May 2, 2007, police executed search warrants for two homes: 5966 Manistique Street, in Detroit, Michigan, the home of Russell Marcilis I (Marcilis I) and his wife, Marie Marcilis; and 17268 Suffield Drive in Clinton Township, Michigan, the home of Russell Marcilis II (Marcilis II) and his wife, Felicia Marcilis, and the location Jasmine Marcilis was visiting at the time of the search.  A confidential informant had provided information about the possession and sale of illegal narcotics at the homes; this information, along with a corroborating investigation by Redford Township Police Officer Brian Jones, provided the basis for the search warrant.  The warrants authorized the federal agents and police officers to seize:

> All suspected controlled substances, . . . all monies and valuables derived from the sale of controlled substances and any items obtained through the sale of controlled substances. All firearms and items establishing ownership, control, occupancy or possession of the above-described place. All photographs, photo albums, and video cassettes that depict controlled substances and/or proceeds from controlled substances. All bank records, bank statements and safety deposit keys.

Drug Enforcement Administration Agents Brad Doyle and Dave Livingston, and police officers from Redford Township and Detroit conducted the searches. At approximately 10 a.m., the federal agents and the police officers arrived at 17268 Suffield Drive. After entering the residence, the agents and officers allegedly told both Marcilis II and Felicia to lie on the floor and held them at gunpoint. Officer Jones asked Marcilis II about the location of cocaine and $300,000.00. After detaining Marcilis II and Felicia for ten minutes in the house, the police officers handcuffed Marcilis II and Felicia and placed them in a police car. The police officers held Marcilis II and Felicia in the car for thirty minutes. The police subsequently took both Felicia and Marcilis II to a police station, allegedly holding Felicia for approximately eight hours and Marcilis II for three days. According to the police officers, Felicia and Marcilis II were detained for less than one day. On November 8, six months after the search, the United States filed related criminal charges against Marcilis II in district court; the district court dismissed the charges upon motion by the United States.

Immediately after searching the Suffield Drive home, the federal agents and the police officers went to 5966 Manistique Street and conducted a search of that home. Marcilis I, Marie, and Jasmine allege that the search lasted ninety minutes. The Marcilises allege that the federal agents and the police officers entered with their guns drawn and held their guns by their sides throughout the search. The federal agents and the police officers ordered everyone in the Manistique Street home to get on the floor. The federal agents and the police officers pushed Marcilis I, who was wrapped in bandages due to a prior injury and unable to lie down, to the floor. The federal agents and the police officers grabbed Marie's arm and pushed her to a couch, causing bruises. Marie suffers from cancer and diabetes; during the search, the agents and officers did not

allow her to take her medications, despite her request that she be allowed to do so. According to Marie, the federal agents and the police officers "took her medications, destroyed vials of insulin, and broke her insulin needles," even though the medications were marked as prescriptions and she offered to provide medical documentation. After completing the search, the agents and officers left the Manistique Street home.

During the search of the Suffield Drive home, the federal agents and the police officers seized two small bags with leafy material inside, three Rolex watches, two other watches, two cell phones, a jar with leafy material inside, three chains, four bracelets, one ring, various documents, and three cars. Felicia and Marcilis II testified by affidavit that the federal agents and police officers seized from the Suffield Drive home, and did not return to them, the following items: Felicia's wedding ring, a concealed weapons permit, approximately $16,000.00 in cash, bank receipts, mail, and personal photographs. The police returned the three seized cars approximately one week after the search. At the Manistique Street home, the federal agents and the police officers seized an empty suspected cocaine wrapper, a clear plastic bag containing a white substance, two digital scales, and various documents. Marie and Marcilis I testified by affidavit that the police officers seized from the Manistique Street home, and did not return to them, the following items: the deed to the house, birth certificates, a marriage certificate, and personal photographs. According to the police officers, all items other than the cash which Marcilis II agreed to release to the police officers were returned to the Marcilises.

The Marcilises filed this action on April 30, 2009 and twice thereafter amended the complaint. On August 16, 2010, the district court granted the motion of the federal agents—Doyle and Livingston— to dismiss all claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Prior to the district court's ruling on the federal agents' motion to dismiss, the Marcilises sought a sixty-day adjournment of the scheduling order; the district court denied this request. On November 18, the district court granted in part the motions for summary judgment filed by Redford Township and the police officers. The district court dismissed all pending claims against Redford Township and the police officers except the claim against the

police officers alleging a failure to knock and announce their presence.  The Marcilises now appeal the dismissal of claims against the federal agents, the district court's refusal to grant Marcilises' request for adjournment of the scheduling order, and the grants of summary judgment to the police officers and Redford Township.

II.

A.       Dismissal of Claims Against Federal Agents

The Marcilises appeal the district court's dismissal of claims against Drug Enforcement Administration Agents Doyle and Livingston.  The Marcilises sued Doyle and Livingston in their individual and official capacities for violations of section 1983.  Because Doyle and Livingston are employed by the federal government, and not a state government, the district court correctly construed the claims as arising under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  *See* 42 U.S.C. § 1983 (allowing civil rights claims for violations committed under the color of state law); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 n.1 (6th Cir. 2000) (explaining that *Bivens* claims arise out of violations of an individual's federal constitutional rights by one who is acting under color of federal law).  The district court also correctly construed the claims as arising against Doyle and Livingston in their individual capacities only.  *See Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011) (stating that *Bivens* claims may be asserted against federal officials only in their individual capacities).

The district court dismissed the claims against Doyle and Livingston after determining that the complaint "failed to allege the personal involvement of [Doyle or Livingston] so as to inform [either Doyle or Livingston] of the constitutional violations being specifically asserted against them."  The Marcilises requested the opportunity to amend the complaint as to the allegations against Doyle and Livingston; the court declined the Marcilises' request because the Marcilises had already thrice amended the complaint.  The Marcilises appeal the district court's dismissal of the complaint and its refusal to let them once again amend the complaint.

On appeal, Doyle and Livingston argue that the Marcilises' complaint fails because it is a generalized pleading that refers to all defendants generally and categorically. Though we have not yet addressed this issue in a published opinion, we have found, in an unpublished opinion, that a complaint failed where a plaintiff "did not allege that particular defendants performed the acts that resulted in a deprivation of [plaintiff's] constitutional rights. This is a requirement in *Bivens* actions such as this one." *Kesterson v. Moritsugu*, 149 F.3d 1183, No. 96-5898, 1998 WL 321008, at *4 (6th Cir. June 3, 1998) (unpublished table decision). The Tenth Circuit has found that a complaint containing only collective references to defendants does not adequately state a *Bivens* claim. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."); *see also Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy [the] minimum standard" that "a complaint give each defendant fair notice of what the plaintiffs claim is and the ground upon which it rests." (internal quotation marks omitted)). We have made similar statements in the context of non-*Bivens* constitutional tort claims against government actors. *See, e.g.*, *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right."). Requiring that federal defendants be identified with particularity is also in accord with how the Supreme Court discussed *Bivens* liability in *Iqbal*: "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

The complaint mentions Doyle and Livingston only in paragraph six, for the purposes of identifying them as employees of the Drug Enforcement Administration.

Otherwise, the complaint makes only categorical references to "Defendants."   We conclude that the district court did not err in dismissing the claims against Doyle and Livingston for failing to "allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman*, 529 F.3d at 684.

B.     Refusal to Adjourn Scheduling Order

The Marcilises challenge the district court's denial of their motion for a sixty-day adjournment of the scheduling order. We review a district court's denial of a motion to modify a scheduling order for abuse of discretion. *See Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005).  An abuse of discretion occurs when "the district court's decision is clearly unreasonable, arbitrary or fanciful." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 343 (6th Cir. 2002) (internal quotation marks omitted).

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  A court asked to modify a scheduling order for good cause "may do so only if [a deadline] cannot reasonably be met despite the diligence of the party seeking the extension." *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (internal quotation marks omitted).  An "important consideration for a district court deciding whether Rule 16's good cause standard is met is whether the opposing party will suffer prejudice by virtue of the amendment."  *Id.* (internal quotation marks omitted).

The Marcilises argue that "good cause" existed to support an adjournment of the scheduling order because, while they awaited the district court's ruling on the federal agents' motion to dismiss, the Marcilises were unable to proceed with discovery. Redford Township and the police officers agreed to the extension sought by the Marcilises.  Doyle and Livingston objected to the motion pending a ruling on their motion to dismiss.  Contrary to the Marcilises' assertions, the lack of an adjournment did not prevent the Marcilises from proceeding with discovery as to the police officers. Moreover, because the district court dismissed the claims against Doyle and Livingston, the Marcilises' inability to depose Doyle and Livingston did not prejudice the Marcilises.  Because the district court's decision was not clearly unreasonable, arbitrary,

or fanciful, we conclude that the district court did not abuse its discretion by denying the Marcilises' motion for a sixty-day adjournment of the scheduling order.

C.        Summary Judgment

The Marcilises argue that the district court improperly granted the police officers' motion for summary judgment on the Marcilises' claims of excessive force, unreasonable search and seizure, malicious prosecution, and First Amendment retaliation claims.  On each of these claims, the district court determined that the police officers were entitled to qualified immunity, either because the Marcilises failed to demonstrate that the officers violated the asserted constitutional right at issue or because a reasonable officer would not have known that the actions were a violation of constitutional rights. The Marcilises also appeal the grant of summary judgment for the police officers on the Marcilises' "failure to train" and "failure to supervise" claims against Redford Township.  The district court granted Redford Township summary judgment on the failure to train and failure to supervise claims after finding that the Marcilises failed to present sufficient evidence that Redford Township had prior notice that its officers were being inadequately trained, or that Redford Township had ignored a history of abuse or constitutional violations.

We review de novo "a district court's denial of summary judgment on the grounds of qualified immunity." *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011). "We review de novo denials of motions for summary judgment on purely legal grounds [and] we review for abuse of discretion denials based on the finding of a genuine issue of material fact."  *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 459 (6th Cir. 2011).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "An official may, however, be held personally liable for civil damages for unlawful official action if that action was not objectively reasonable in light of the legal

rules that were clearly established at the time it was taken." *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011) (internal quotation marks omitted). Whether an action was "objectively reasonable" in light of clearly established rules is "a fact-specific, case-by-case" inquiry focused on "whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene." *Id.* To determine whether an official is entitled to qualified immunity, we must answer two questions: whether a defendant violated a constitutional right and whether the right was clearly established. *Bishop*, 636 F.3d at 765. Based on the circumstances of the case at hand, we "may exercise [our] discretion" in deciding which question to address first in analyzing qualified immunity as to each claim. *Id.*

### 1.      Excessive Force

The district court granted the police officers' motion for summary judgment on the claim of excessive force, finding that, though the Marcilises provided sufficient evidence that the police officers may have used excessive force, the police officers were nonetheless due qualified immunity.

The use of excessive force in the execution of a search warrant constitutes a Fourth Amendment violation. *See Grawey v. Drury*, 567 F.3d 302, 311 (6th Cir. 2009). "To determine whether a constitutional violation based on excessive force has occurred, this Court applies the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010) (internal quotation marks omitted).

The Marcilises assert that the following actions by the police during the search support a finding of excessive force in violation of their Fourth Amendment rights: (1) the police officers threw Marie onto a couch, causing bruises; (2) the police officers threatened to hit Marie in the face with a gun; (3) the police officers pushed Marcilis I "violently" to the floor despite the fact that he was visibly bandaged; (4) the police officers pointed guns at Marcilis I, Marie, and Jasmine for thirty minutes; (5) the police

officers handcuffed Felicia and Marcilis II for ten minutes; and (6) the federal agents and police officers wore combat gear or masks.  The police officers argue that even if these actions themselves constitute excessive force, the law was not clearly established such that the police officers would have known these specific actions were unconstitutional under the circumstances presented here.

Supreme Court precedent, *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981) (footnote omitted), recognizes the dangers inherent in narcotics-related searches:

> [T]he execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence.  The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.

Likewise, our Circuit has made clear that officers conducting residential searches may detain individuals in handcuffs and display firearms where the officers have a justifiable fear of personal safety.  *See, e.g.*, *Ingram v. City of Columbus*, 185 F.3d 579, 591-92 (6th Cir. 1999).

Under our jurisprudence, the use of handcuffs on Felicia and Marcilis II during the search of the Suffield Drive home does not constitute a constitutional violation.  *See, e.g.*, *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (upholding the use of handcuffs during a two- or three-hour detention during execution of search warrant for weapons). Likewise, we find that any verbal threat made against Marie was not excessive force. *Cf. Giese v. Wichita Police Dep't*, 69 F.3d 547, No. 04-3439, 1995 WL 634173, at *2 (10th Cir. 1995) (finding that, in the context of questioning, verbal threats "do not constitute the use of excessive force").

Regardless of whether the force allegedly used by the police officers in this case was greater than necessary, we believe that the police officers could have reasonably believed that their conduct was a lawful means of exercising command of the situation. *See Summers*, 452 U.S. at 703.  The warrant authorized the officers to search for weapons and drugs in both homes; and, with respect to the Suffield Drive search,

Marcilis II had previously pleaded guilty to assaulting a police officer. Given the purpose of the searches, and the risks involved in a drug raid, *id.*, a reasonable officer in the police officers' position would have been justifiably concerned with his safety and "could have believed" that the level of force used was lawful. *Cochran*, 656 F.3d at 306.

The instant case is distinguishable from others where we have found that officers engaged in similar actions were not entitled to qualified immunity. For example, in *Pray v. City of Sandusky*, we found that officers' action forcing innocent suspects to the floor at gunpoint was excessive force under the circumstances. 49 F.3d 1154, 1159 (6th Cir. 1995). In *Sandusky*, however, there was evidence that the officers caused physical injuries to plaintiffs after the officers had already learned that they had entered the wrong home. *Id.* at 1160-61. In contrast, in the case before us today, the evidence suggests only that the police exerted force on the Marcilises as they entered and took control of the homes; there is no evidence that the police improperly continued to detain the Marcilises after the search was concluded. In *Binay*, 601 F.3d at 650, we declined to extend qualified immunity protection to police officers at the summary judgment stage where the officers had handcuffed the plaintiffs and held them at gunpoint throughout a search of the plaintiffs' apartment. Unlike in the present action, in *Binay* "the officers did not anticipate the presence of firearms" and the officers detained and interrogated the plaintiffs *after* a drug-sniffing dog searched the apartment and found no drugs. *Id.* at 644. Indeed, the canine search in *Binay* was completed in fifteen minutes and yet plaintiffs were held for approximately one hour. *Id.* In contrast, the police officers here entered the homes with notice that weapons might indeed be found, as evidenced by the warrant's authorization to search for weapons. Moreover, the Marcilises—except Marcilis II and Felicia who were arrested based on probable cause, discussed in greater detail below—were detained only as long as the searches lasted.

Under the circumstances here—a raid on two homes wherein police had been authorized to search for firearms and drugs—a reasonable officer would not have known that the force used here would be considered excessive. *See Cochran*, 656 F.3d at 306. "The contours of the right to freedom from the use of excessive force were not so clearly

established in a particularized sense that a reasonable officer would have known that such conduct was unlawful [here]." *Dorsey v. Barber*, 517 F.3d 389, 402 (6th Cir. 2008). We conclude that the district court did not err in finding that the police officers are due qualified immunity in this case.

### 2. Unreasonable Search

The Marcilises argue that the district court wrongfully granted summary judgment to the police officers on the claim that the police officers violated the Marcilises' Fourth Amendment right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Specifically, the Marcilises allege multiple ways in which the search by the police officers was not reasonable within the meaning of the Fourth Amendment. We address each of the Marcilises' allegations of unreasonableness in turn.

### a. Probable Cause

The Marcilises first argue that the search was unconstitutional because the affidavit upon which the search warrant was based did not include sufficient evidence to support a finding of probable cause. Under the Fourth Amendment, no search warrant shall issue without probable cause. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006). Our probable cause determination is confined to the information within the four corners of the affidavit supporting the search warrant request. *Id.* Probable cause exists where there is a "fair probability" or "reasonable grounds for belief" that police will find evidence of a crime at the location of the proposed search. *Id.*

The affidavit submitted in support of the warrant to search the Marcilises' homes was executed by Officer Jones and was based on the reports and statements of a confidential informant as well as on the independent investigation by Officer Jones of the Redford Township Police Department in which he observed controlled drug purchases between informants and Marcilis II. The Redford Township Police Department, in conjunction with the Drug Enforcement Agency, investigated Marcilis II's involvement in narcotics distribution from November 2006 until May 2007, a period

of more than six months, prior to the date the police officers sought the search warrant. As part of the investigation prior to seeking the search warrant, police officers also searched the garbage outside of both the Manistique Street and Suffield Drive homes. In the garbage outside of the Manistique Street home, the officers found torn, clear, plastic bags containing a white powdery substance that field-tested positive for cocaine and green plant stems that field-tested positive for marijuana. In the garbage outside of the Suffield Drive home, the police officers recovered a suspected marijuana joint. During the investigation, police officers observed multiple instances of suspected drug transactions involving Marcilis II; Marcilis II made trips to both the Manistique Street and Suffield Drive homes during these transactions. An informant provided details of these activities and an independent police investigation corroborated these details; there was enough evidence gathered to establish probable cause. *See id.* at 307 (finding that where information in an affidavit is based on an informant of unestablished reliability, probable cause may exist based on independent corroboration by police officers); *see also United States v. Strickland*, 144 F.3d 412, 416-17 (6th Cir. 1998). We conclude that there was sufficient probable cause here to support the search warrant.

b.      Stale Information

The Marcilises also allege that the search was unconstitutional because the warrants that authorized the search included stale information. Stale information cannot be the basis for establishing probable cause. *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010). "In the context of drug crimes, information goes stale very quickly" because drugs are quickly sold and consumed. *Id.* However, evidence that criminal activity is of an ongoing nature will defeat claims of staleness. *United States v. Spikes*, 158 F.3d 913, 923-24 (6th Cir. 1998). The search warrant was executed, and the searches of the Manistique Street and Suffield Drive homes occurred, on May 2, 2007. The affidavit submitted in support of the search warrant included evidence of a controlled drug buy from the Manistique Street home within thirty-five hours of the submission of the affidavit, other controlled buys of cocaine made between January and March 2007, and drug activity connected to the two homes extending back to November

2006.  Because the affidavit contained information regarding ongoing criminal activity, we conclude that the information in the warrant was not stale.

### c.        Manner of the Searches

The Marcilises also attacked the manner of the searches, alleging that the police officers unreasonably damaged property during the searches.  As we have noted, *Hill v. McIntyre*, 884 F.2d 271, 278 (6th Cir. 1989) (citations and internal quotation marks and modifications omitted) (first alteration in original),

> Of course, officers executing search warrants must often damage property in order to perform their duty . . . . [T]he standard is reasonableness, and in a § 1983 action the District Court must determine not whether destruction was reasonably necessary to effectively execute a search warrant but whether the plaintiff has raised factual issues to be submitted to the jury on this point.

The Marcilises did not raise this issue before the district court, presenting neither argument nor legal citation before the district court on the issue of property damage.  Generally, "an argument not raised before the district court is waived on appeal to this Court."  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008); *Foster v. Barilow*, 6 F.3d 405, 406 (6th Cir. 1993).  There are narrow exceptions to this rule that do not apply here and we have "rarely" exercised our discretion to depart from the rule, *Scottsdale Ins. Co.*, 513 F.3d at 552.  We decline to do so here.  Further, though the Marcilises included factual allegations that police damaged property during the search, they did not include legal argument on the theory they now present on appeal.  For these reasons, we find that the Marcilises have waived their right to argue this claim on appeal.

### d.        Scope of the Seizure

The Marcilises also argue that the police officers violated the Marcilises' Fourth Amendment rights during the searches by seizing property in excess of the scope of the search warrant.  "It is well-settled that items to be seized pursuant to a search warrant must be described with particularity . . . . However, . . . even evidence not described in a search warrant may be seized if it is reasonably related to the offense which formed the

basis for the search warrant." *United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003) (citation and internal quotation marks omitted).

The Marcilises complain that the federal agents and the police officers took money, three cars, jewelry, personal effects, permits to carry concealed weapons, bills, and personal photographs. The specific bills and photographs that were allegedly taken are not described in detail by the Marcilises. The warrant authorized the federal agents and the police officers to seize:

> All suspected controlled substances, . . . all monies and valuables derived from the sale of controlled substances and any items obtained through the sale of controlled substances. All firearms and items establishing ownership, control, occupancy or possession of the above-described place. All photographs, photo albums and video cassettes that depict controlled substances and/or proceeds from controlled substances. All bank records, bank statements and safety deposit keys.

The money, the jewelry, and the personal effects, are all valuable items or proceeds which fall within the scope of the warrant. *See, e.g.*, *United States v. Blair*, 214 F.3d 690, 697 (6th Cir. 2000) (finding that vehicles, jewelry, and money are "items related to narcotics transactions or the proceeds of narcotics transactions"). Likewise, the police officers may have reasonably believed that any bills seized and photographs taken, as well as the weapons permit, marriage license, and property deed, contained information reasonably related to the sale and the possession of narcotics, possession and ownership of firearms, the depiction of controlled substances and proceeds from controlled substances, and the ownership of the searched homes. *See United States v. Savoy*, 280 F. App'x 504, 511 (6th Cir. 2008). Moreover, a search does not become invalid merely because some items not covered by a warrant are seized. Rather, an otherwise valid search becomes an impermissible general search only where the searching officers demonstrate a flagrant disregard for the limitations of a search warrant. *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985). Though the officers might have been mistaken as to whether the photographs seized were within the scope of the warrant, we cannot conclude that it was a "flagrant disregard" of the warrant limitation to seize photographs pursuant to a warrant that expressly provided for the

seizure of "all photographs . . . depict[ing] controlled substances and/or proceeds from controlled substances." *See, e.g., United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988) (finding that the improper seizure of 667 pieces of property grossly exceeded the scope of the warrant and required suppression of all evidence under the warrant). We find that the district court correctly concluded that police officers are due qualified immunity on this claim.

### 3.        Detention During Searches

The Marcilises assert that the district court improperly granted summary judgment to the police officers on the Marcilises' claim that they were detained in violation of the Fourth Amendment during the searches. "A 'seizure' occurs when police detain an individual under circumstances where a reasonable person would not feel free to leave." *United States v. Lopez-Medina*, 461 F.3d 724, 739 (6th Cir. 2006). We assess the reasonableness of a seizure of an individual based on the totality of the circumstances. *Tennessee v. Garner*, 471 U.S. 1, 9-10 (1985). In *Summers*, the Supreme Court made clear that officers executing a search warrant for contraband have the limited authority to detain occupants of a premises while a search is being conducted. 452 U.S. at 704-05. Once suspects are removed from the scene of the search, however, the Fourth Amendment requires probable cause for their seizure. *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 591 (6th Cir. 1994).

The Marcilises argue that the seizures in this case were unreasonable. The Marcilises argue that Marie, Marcilis I, and Jasmine were unlawfully detained when they were not allowed to move or leave during the ninety-minute search of the Manistique Street home, and that Marcilis II and Felicia were unlawfully detained when they were handcuffed, taken to a police car, and then jailed—Marcilis II for three days and Felicia for eight hours. The police officers do not dispute that seizures took place but argue that each seizure was reasonable under the circumstances.

The Marcilises rely chiefly on *Ingram*, 185 F.3d at 591, to support their argument that the seizures in this case were unconstitutional. In *Ingram*, we held that police officers acted unconstitutionally when, during the search for a fleeing suspect, the

officers detained the resident of a home where the suspect was thought to be residing and the detention lasted for the duration of the search. *Id.* at 591-92. Our Court determined that the officers in *Ingram* had acted unreasonably by handcuffing and pointing guns at the residents in the home because the officers had not acted out of a justifiable fear for their safety and they did not conduct the search in reliance on a warrant based on probable cause. In *Ingram*, officers "possessed no independent information leading them to believe that [the detained resident] was a dangerous individual," and the record showed that the officers has no reason to believe that the home being searched contained weapons. *Id.* at 592. In contrast, the police officers in the present case were acting pursuant to a search warrant authorizing a search for weapons and issued based on documentation of prior criminal activity associated with both homes. The police officers conducting the search were also aware that Marcilis II had previously pleaded guilty to assaulting a police officer.

Marcilis I, Marie, and Jasmine were detained for the duration of the search—ninety minutes. None of the three were handcuffed during the search. Under these circumstances, ninety minutes is a reasonable period of time for occupants to be detained while police officers secure the scene and search for controlled substances. *See., e.g.*, *Muehler*, 544 U.S. at 98. Given the totality of the circumstances described above, a reasonable juror could not find that the police officers unreasonably seized Marcilis I, Marie, and Jasmine during the search of Manistique Street in violation of the Fourth Amendment. *See Ingram*, 185 F.3d at 591-92 (noting that handcuffing and detention of occupants of a residence being searched, accompanied by officers' display of firearms is permissible where there is a justifiable fear of personal safety); *Burchett v. Kiefer*, 310 F.3d 937, 942-43 (6th Cir. 2002) (noting that *Summers* involved a limited detention of home occupants that was not unconstitutional).

Felicia and Marcilis II were detained in the Suffield Drive home for ten minutes and then held in a police car for thirty minutes. After this, they were taken to a police station and placed under arrest. Under the circumstances, the ten-minute detention during the search of the house was reasonable. *See Muehler*, 544 U.S. at 98. Once the

police officers removed Marcilis II and Felicia from the home, probable cause was required to support their continued detentions. *Centanni*, 15 F.3d at 590-91. "In determining whether probable cause existed," we "consider whether there are facts that, given the factual and practical considerations of everyday life, could lead a reasonable person to believe that an illegal act has occurred or is about to occur." *United States v. Gill*, 685 F.3d 606, 609 (6th Cir. 2012) (alterations and internal quotation marks omitted). The search of the Suffield Drive home, which preceded the arrests of Felicia and Marcilis II, produced two bags of leafy material, drug paraphernalia, and large amounts of money—evidence which could lead a reasonable person to believe that illegal drug activity "ha[d] occurred or [was] about to occur." *Id.* The affidavit in which Officer Jones attested to information regarding ongoing narcotics activity also supports a finding of probable cause. We conclude that the police officers had probable cause to arrest—and bring criminal charges against—both Felicia and Marcilis II, and the district court did not err in granting summary judgment to the police officers on this claim.

### 4.     False Arrest and Malicious Prosecution

The Marcilises allege that the district court improperly granted summary judgment on the false arrest and malicious prosecution claims derived from the November 2007 arrest of Marcilis II and the subsequently filed criminal charges. "In order to prove malicious prosecution under federal law, a plaintiff must show, at a minimum, that there is no probable cause to justify an arrest or a prosecution." *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 675 (6th Cir. 2005). The Marcilises argue that Marcilis II was only arrested and charged with a crime in retaliation for his attorney pressuring the police to return Marcilis II's wedding ring and because Marcilis II challenged the legality of the raids. The district court determined that this claim fails because probable cause existed for Marcilis II's criminal charge and related arrest.

As we determined above, the police officers had probable cause to arrest and charge Marcilis II based on the items found during the Suffield Drive search, as well as the evidence obtained during the investigation that took place prior to the search. We conclude that the police officers had probable cause to arrest and bring criminal

charges against Marcilis II, and we affirm the district court's grant of summary judgment to the police officers on the Marcilises' false arrest and malicious prosecution claims. *See Hartman v. Moore*, 547 U.S. 250, 265-66 (2006) ("Because showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added cost, it makes sense to require such a showing as an element of a plaintiff's [malicious prosecution] case, and we hold that it must be pleaded and proven.").

### 5.        First Amendment Retaliation Claim

The Marcilises allege that the district court wrongfully dismissed their claim that the police arrested and prosecuted Marcilis in retaliation for exercising his First Amendment rights. Like the malicious prosecution claim, the Marcilises' First Amendment retaliation claim is based on the theory that Marcilis II was charged with a crime in retaliation for his efforts to recover property seized from him and his family during the raid. We find that the Marcilises' First Amendment retaliation claim is essentially a repackaged version of their malicious prosecution claim and fails because, as explained above, where there is probable cause to file a criminal complaint, a plaintiff will be unable to prevail on retaliation claim. *Id.* Because we find that there was probable cause to file a criminal complaint against Marcilis II, we find that the district court did not err in granting the police officers' motion for summary judgment on the Marcilises' claim of retaliation in violation of the First Amendment.

### 6.        Claims Against Redford Township

The Marcilises allege that the district court wrongfully granted summary judgment to Redford Township on the Marcilises' claims that Redford Township failed to train and supervise the Redford Township police officers involved here in violation of section 1983. A plaintiff can demonstrate that a municipality has violated section 1983 by proving that the municipality's training or supervision was inadequate. *See Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). To prevail "on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was

closely related to or actually caused the injury." *Id.* We have further elaborated that, "[t]o show deliberate indifference, Plaintiff[s] must show prior instances of unconstitutional conduct demonstrating that the [Township] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (internal quotation marks omitted).

The Marcilises allege the following evidence of Redford Township's failure to train its police officers: (1) Officer Jones could not remember when he last received training about the use of force; (2) Officer Woodall testified that his only use-of-force training took place during his time at the police academy; (3) Officer Jones testified that he received only on-the-job training about how to execute a search warrant; and (4) Officer Woodall could not remember when he last received training on arrests and search warrants. As evidence of Redford Township's failure to supervise its police officer, the Marcilises assert that Redford Township neither conducts performance evaluations of officers nor has a system in place to review or monitor its officers.

Redford Township argues that the Marcilises' claims fail because the Marcilises have not come forward with evidence of deliberate indifference, the second prong of a failure to train or supervise claim. A review of the record reveals that the Marcilises have failed to come forward with evidence of any history of abuse or any events that would have put Redford Township on notice that officer training regarding the use of force or search warrant execution was "deficient [or] likely to cause injury." *Id.* Thus, the Marcilises' claims fail because the Marcilises have "failed to present probative evidence as to the question of deliberate indifference." *Id.* We find that the district court correctly granted summary judgment to the police officers on this claim.

III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.