NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0347n.06

Case Nos. 22-1957/1967

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

<table>
<tr><td>HELENA AGRI-ENTERPRISES, LLC,</td><td>)</td><td rowspan="2"><strong>FILED</strong><br>Jul 28, 2023<br>DEBORAH S. HUNT, Clerk</td></tr>
<tr><td>    Plaintiff/Counter-Defendant-Appellee,</td><td>)<br>)</td></tr>
<tr><td>v.</td><td>)<br>)</td><td>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN</td></tr>
<tr><td>AAA TURF, INC.,</td><td>)<br>)</td><td></td></tr>
<tr><td>    Defendant/Counter-Plaintiff/Third-<br>    Party Plaintiff-Appellant,</td><td>)<br>)</td><td>OPINION</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>J.R. SIMPLOT COMPANY; JACKLIN SEED,</td><td>)</td><td></td></tr>
<tr><td>    Third-Party Defendants-Appellees.</td><td>)<br>)</td><td></td></tr>
</table>

Before: SUTTON, Chief Judge; DAVIS and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Helena-Agri Enterprises, LLC and AAA Turf, Inc. had a long-running business relationship. In 2014, Helena convinced AAA Turf to try out a new seed for its sod-growing business. The results were spectacular. Helena later sold AAA Turf a different type of seed manufactured by J.R. Simplot Company d/b/a Jacklin Seed. Unfortunately, Simplot's seed did not perform as well, and AAA Turf's business plunged deeply in the red. Helena eventually sued AAA Turf to recover several months' worth of unpaid invoices. AAA Turf countersued Helena and roped in Simplot as a third-party defendant.

AAA Turf amended its countersuit several times throughout the litigation, with the district court denying its last request. After all parties filed motions for summary judgment, the district

court decided in favor of Helena and Simplot. AAA Turf now appeals the denial of its motion to amend its counterclaim and the district court's summary judgment decision. Because neither decision was erroneous, we affirm.

## I.

For over 20 years, AAA Turf has operated a sod-farming business in Michigan. For years, it purchased most of its seed, fertilizer, and herbicides from Landmark Turf & Native Seed. But in 2014, AAA Turf began looking elsewhere. Hoping to quicken its production of harvestable sod, AAA Turf's president, Tom Miedema, contacted one of Helena's agents, Greg Ward, about potentially switching its business over to Helena. As part of his pitch, Ward put together a tailored program, dubbed the "Helena Program," to accelerate AAA Turf's sod growth through Helena's fertilizers and herbicides. AAA Turf bought into the Helena Program and started buying Helena's fertilizers and herbicides through a preexisting Credit Sales and Services Agreement between the companies (the "2008 CSSA").

According to AAA Turf, at the end of 2014, Ward tried to get AAA Turf to switch its seed business over to Helena as well. At the time, AAA Turf still bought its seed from Landmark, while applying Helena's fertilizers and herbicides as part of the Helena Program. But Ward convinced AAA Turf to test a new seed on a small plot. Although the Landmark Seed yielded harvestable sod within six months on the Helena Program, cutting down AAA Turf's growing period by nearly half, the new seed plot produced harvestable sod within twelve months without the Helena Program and without irrigation.

In 2015, Ward and one of Simplot's representatives, Mark Grundman, met with Miedema to convince AAA Turf to transition AAA Turf's entire sod business over to using My Holiday

Lawn, a seed manufactured by Simplot. AAA Turf switched all its fields over to My Holiday Lawn. The replacement of the main plot started in 2015.

According to AAA Turf, the problems with My Holiday Lawn began on the main plot almost immediately. The seed failed to germinate in 2015. Despite the setback, Ward told AAA Turf not to worry, assuring AAA Turf that the main plot would germinate in the spring of 2016. But the assurances failed to materialize when the main plot again failed to germinate in 2016.

By this time, and likely stemming from the missed harvesting targets, AAA Turf's credit imbalance with Helena began exceeding the limits permitted by the 2008 CSSA. Ward contacted Miedema about the problem and suggested raising AAA Turf's credit limit. Ultimately, AAA Turf entered into a revised credit agreement with Helena (the "2016 CSSA"), which kept most of the terms of the 2008 CSSA in place but with a higher credit limit.

AAA Turf's harvesting prospects failed to improve. AAA Turf contends that it attempted to harvest sod from the main plot in 2017, but the sod was of poor quality. Like prior years, My Holiday Lawn failed to produce harvestable sod.

By this time, AAA Turf was suffering financially and was significantly behind on its payments to Helena. Ultimately, the unpaid invoices became too much for Helena. In 2019, Helena sued AAA Turf for breach of contract and several other claims, seeking to recover an unpaid balance of over $120,000.

AAA Turf countersued Helena and brought a third-party action against Simplot.

The case proceeded to discovery. AAA Turf claims that it learned for the first time in October 2020 that the seed used in the 2014 test plot was not My Holiday Lawn, but a different variety. AAA Turf notified Helena at that time that it intended to amend its counterclaim to include claims for fraud in the inducement and silent fraud/fraudulent concealment. But AAA Turf did

not move to amend its counterclaim until three days after the close of discovery, and more than a year after the deadline for amending pleadings. The district court denied AAA Turf's motion.

Cross-motions for summary judgment followed. The district court granted summary judgment in favor of Helena and Simplot. AAA Turf's timely appeal followed.

## II.

*Did the district err in denying AAA Turf's motion to amend its counterclaim?* We review the denial of a motion to amend for abuse of discretion. *See Zakora v. Chrisman*, 44 F.4th 452, 465 (6th Cir. 2022). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or uses an erroneous legal standard." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 218 (6th Cir. 2019) (quotation omitted).

A party can amend its pleading once as a matter of course within 21 days of service, or if a responsive pleading is required, "21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). After that, amendment can occur only with the opposing party's consent or the court's permission. FED. R. CIV. P. 15(a)(2). A court will "freely give leave when justice so requires." *Id.* But when amendment requires modification of the scheduling order, the party seeking to amend its pleading must show "good cause." FED. R. CIV. P. 16(b)(4); *see Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 879 (6th Cir. 2020).

AAA Turf sought to amend its counterclaim (for the third time) more than one year after the district court's deadline for amending pleadings and days after the twice-extended discovery deadline had expired. Thus, AAA Turf was required to show good cause.

"A court asked to modify a scheduling order for good cause 'may do so only if [a deadline] cannot reasonably be met despite the diligence of the party seeking the extension.'" *Marcilis v.*

*Twp. of Redford*, 693 F.3d 589, 597 (6th Cir. 2012) (alteration in original) (quoting *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003)). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quotation omitted). "Another important consideration for a district court deciding whether Rule 16's 'good cause' standard is met is whether the opposing party will suffer prejudice by virtue of the amendment." *Leary*, 349 F.3d at 906 (citing *Inge*, 281 F.3d at 625).

The district court did not abuse its discretion in denying AAA Turf's motion to amend its counterclaim. AAA Turf argues that it "did not learn until October 2020 that the 2014 test plot may not have contained My Holiday Lawn seed." D. 27 at 30. Specifically, AAA Turf claims its counsel reviewed the invoice for the 2014 test plot in preparing to depose one of Helena's witnesses and noticed that the invoice described the test plot seed as "Sod Forever Blend w/ Tazo" and "Sod Sports Mix with Tazo B," which are different from the My Holiday Lawn seed. R. 164-2, PageID 1656. The witness confirmed that the test plot seed was different from the My Holiday Lawn seed. The problem for AAA Turf is that they had the invoices for the 2014 test plot and for the My Holiday Lawn seed long before October 2020. Invoices for the main plot seed described the seed as "Grass Holiday Bluegrass." R. 1-2, PageID 15, 31. While none of these invoices explicitly uses the words "My Holiday Lawn," they show that the test plot and the main plot seed were different. Of course, AAA Turf may have believed that it was using My Holiday Lawn all along. But that does not absolve AAA Turf of the responsibility of reviewing the invoices it received from Helena. AAA Turf is a sophisticated party. It was reasonable for the district court to expect AAA Turf to have discovered the discrepancy earlier.

AAA Turf fails to explain why it waited until October 2020 to confront Helena about the differences between the products listed on the invoices. AAA Turf also does not explain its decision to wait nearly three months after Helena's witness confirmed in October 2020 that the 2014 test plot did not contain the My Holiday Lawn seed to seek leave to amend its counterclaim. All in all, AAA Turf did not move diligently to meet the deadlines in the scheduling order.

Additionally, Helena would have been prejudiced if AAA Turf were allowed to amend its counterclaim. AAA Turf sought to add claims of fraud in the inducement and silent fraud/fraudulent concealment against Helena. Helena would have been required to defend against those claims either without discovery (as proposed by AAA Turf) or by extending the discovery deadline for a third time. We agree with the district court that "adding more factual allegations and two new claims will require that substantial discovery be revisited and will result in delay and expense." R. 168, PageID 1866. And as we have opined, "[t]he longer the delay, the less prejudice the opposing party will be required to show." *DuBuc v. Green Oak Twp.*, 312 F.3d 736, 752 (6th Cir. 2002). For instance, in *Garza*, we found that the defendants would suffer prejudice where the plaintiff sought to amend his complaint nine months after the deadline for amending pleadings. 972 F.3d at 879–880. AAA Turf missed its deadline by almost thirteen months. Under the circumstances, such a lengthy delay readily supports a finding of prejudice.

### III.

*Did the district court err in granting summary judgment to Helena and Simplot?* We review the grant of summary judgment de novo. *See Puskas v. Delaware Cnty.*, 56 F.4th 1088, 1093 (6th Cir. 2023). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the burden of establishing that there is no genuine dispute

of material fact. *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023). We view all evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Palma v. Johns*, 27 F.4th 419, 427 (6th Cir. 2022).

AAA Turf challenges the district court's grant of summary judgment for the following claims: (1) breach of express warranties (against Helena), (2) breach of implied warranties (against Helena), (3) breach of implied warranties (against Simplot), and (4) AAA Turf's and Helena's respective claims for breach of contract. The parties agree that AAA Turf's claims against Helena and Helena's breach-of-contract claim against AAA Turf are governed by Tennessee law, and AAA Turf's breach-of-implied-warranties claims against Simplot are governed by Michigan law. *See Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 560 (6th Cir. 2016) (observing that we need not conduct a choice-of-law inquiry when there is no dispute on the applicable substantive law). We address each claim below.

### A. Breach of Express Warranties (against Helena)

Under Tennessee law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." TENN. CODE ANN. § 47-2-313(1)(a). "To establish a prima facie claim for breach of an express warranty, a plaintiff must prove that (1) the seller made an affirmation of fact intending to induce the buyer to purchase the goods; (2) the buyer was, in fact, induced by the seller's acts; and (3) the affirmation of fact was false regardless of the seller's knowledge of the falsity or intention to create a warranty." *Smith v. TimberPro Inc.*, No. W2016-00757, 2017 WL 943317, at *3 (Tenn. Ct. App. Mar. 9, 2017) (citation omitted).

Helena made only one express warranty. The 2016 CSSA provides that "[t]he only warranty of Helena regarding seed is that the seed conforms to the label description on the date of

the test shown on the label." R. 20-2, PageID 270. AAA Turf argues that there are genuine disputes of material fact about (1) "whether the 2014 test plot conformed to the label," and (2) "whether the My Holiday Lawn seed planted [in the main plot] . . . conformed to the label." D. 27 at pp. 36–37.

AAA Turf failed to provide sufficient evidence to create a genuine dispute of material fact about whether the seed it received from Helena and Simplot violated their express warranties. For the test plot, the analysis is straightforward because AAA Turf presented no evidence about the labels on the bags of the 2014 test plot seed. Thus, it could not show that the test plot seed did not conform to their labels. For the main plot, AAA Turf's only evidence was an expert who found that the germination rate of the seed received in 2017 and 2018 was lower than what the labels stated. But AAA Turf's expert evidence is problematic for two reasons.

First, the expert evidence addresses only the seed AAA Turf received in 2017 and 2018. AAA Turf therefore provided no evidence about the germination rates of the seed it received in 2015 or 2016.

Second, the timing of the expert's tests negates their value. The labels on the main plot seed warrantied a germination rate as of the date listed on the labels. But the expert's tests occurred a year or two *after* the label dates. As AAA Turf's expert conceded, germination rates decrease over time. This explains why the expert did not find the seed had a "defective" germination rate, despite it testing below the rate listed on the labels. AAA Turf appears to recognize the timing problem, but still argues that: "it is also possible that the germination rate was lower than the labeled rate when AAA Turf received it." D. 27 at p. 49.

AAA Turf needed to show more than "some metaphysical doubt" about whether Helena provided it with defective seed to survive summary judgment. *See Moore v. Philip Morris Cos.*,

8 F.3d 335, 340 (6th Cir. 1993).  Once Helena satisfied its initial burden, AAA Turf had to provide "significant probative evidence" to avoid an adverse summary judgment ruling.  *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018) (quoting *Moore*, 8 F.3d at 340).  AAA Turf failed to clear this hurdle.

### B. Breach of Implied Warranties (against Helena)

Tennessee law permits sellers to disclaim implied warranties of merchantability and fitness for a particular purpose.  *See* TENN. CODE ANN. § 47-2-316(2).  In the 2016 CSSA, Helena did just that.  The 2016 CSSA states that Helena:

> DISCLAIMS TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS OF THE GOODS OR SERVICES FOR ANY PARTICULAR PURPOSE . . . AND NO SUCH WARRANTIES SHALL BE IMPLIED BY LAW OR OTHERWISE.

R. 1-1, PageID 8.

On its face, the disclaimer satisfies Tennessee's requirements for disclaiming such warranties.  *See* TENN. CODE ANN. § 47-2-316(2).  But AAA Turf seeks to skirt the disclaimer by arguing that the 2016 CSSA was unconscionable.  We disagree.

Under Tennessee law:

> Enforcement of a contract is generally refused on grounds of unconscionability where the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.

*Berent v. CMH Homes, Inc.*, 466 S.W.3d 740, 746–47 (Tenn. 2015) (quotation omitted).

Unconscionability can be either procedural or substantive.  *See Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 461 (Tenn. Ct. App. 2009).  Procedural unconscionability involves

"some impropriety during the process of forming the contract that deprives the party of a meaningful choice." *Id.* (quotation omitted). "Substantive unconscionability involves whether the terms of the contract are overly harsh or one-sided." *Id.* (quotation omitted). "[A] determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract." *Taylor v. Butler*, 142 S.W.3d 277, 285 (Tenn. 2004) (quotation omitted). Whether a contract is unconscionable is a question of law. *Id.* at 284–85.

AAA Turf's briefing does not specify whether its unconscionability challenge is procedural or substantive. Either way, it fails. Procedurally, AAA Turf fails to identify any impropriety by Helena that deprived AAA Turf of a meaningful choice. And substantively, the 2016 CSSA was not "one-sided," "unreasonably harsh," or "oppressive." *Vintage Health*, 309 S.W.3d at 465 (quotation omitted). AAA Turf received an extension of credit to purchase Helena's products, despite AAA Turf previously maxing out its credit under the 2008 CSSA. In return, Helena received a monthly interest rate on the unpaid amounts and a limitation of warranties. This arrangement is hardly one where "the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Berent*, 466 S.W.3d at 747 (quotation omitted).

Keep in mind that Miedema successfully operated AAA Turf for over 20 years, reflecting his sophistication as a businessman. Additionally, the 2016 CSSA was not the first credit agreement AAA Turf entered into with Helena. In fact, the 2008 CSSA contains the same types of terms and disclaimers present in the 2016 CSSA.

Moreover, AAA Turf had other means to purchase Helena's products outside of the 2016 CSSA. The 2016 CSSA existed so that AAA Turf could purchase Helena's products on credit

extended by Helena itself. AAA Turf could still purchase Helena's products with cash. As a result, the argument that the 2016 CSSA deprived AAA Turf of a "meaningful choice" is a losing one.

We see no reason to disturb the district court's finding that Helena properly disclaimed implied warranties of merchantability and fitness for a particular purpose in the 2016 CSSA.

### C. Breach of Implied Warranties (against Simplot)

Like Tennessee, Michigan law permits sellers to disclaim implied warranties for merchantability and fitness for a particular purpose. *See* MICH. COMP. LAWS § 440.2316(2).

The bags of Simplot seed bought by AAA Turf through Helena state in all capital letters that Simplot:

> MAKE[S] NO OTHER WARRANTIES, EXPRESS OR IMPLIED, OF MARKETABILITY[,] FITNESS FOR A PARTICULAR PURPOSE, [OR] OTHERWISE CONCERNING THE PERFORMANCE OF THIS SEED.

R. 249-1, PageID 3243.

AAA Turf does not dispute that Simplot satisfied Michigan's requirements for disclaiming such warranties. Instead, AAA Turf argues that a genuine dispute of material fact exists about whether each bag of seed received by AAA Turf contained the disclaimer.

It does not matter whether each bag of Simplot seed contained the implied-warranty disclaimer because there is another reason that AAA Turf's breach-of-implied-warranties claims are doomed. Under Michigan law, "a remote purchaser is subject to the manufacturer's disclaimer of implied warranties in the same manner as is the original purchaser, and can acquire no greater implied-warranty rights from the manufacturer than the original purchaser can." *Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 774 N.W.2d 332, 345 (Mich. Ct. App. 2009). Therefore, if Simplot disclaimed implied warranties when it sold the seed to Helena, those disclaimers would

apply to AAA Turf.  The record evidence reflects that Simplot disclaimed implied warranties in the invoices it provided to Helena.  AAA Turf is thus subject to those disclaimers and, consequently, the district court did not err in granting summary judgment to Simplot on this claim.

### D.  Breach of Contract

AAA Turf and Helena have asserted breach-of-contract claims against each other.  "In a breach of contract action, claimants must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach."  *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011) (citation omitted).

AAA Turf's claim rests entirely on the assumption that the district court erred in denying its motion to amend and that Helena was the first to breach the 2016 CSSA by allegedly breaching the express and implied warranties contained therein.  Because we have rejected those arguments, AAA Turf's breach-of-contract claim fails.

Beyond arguing that Helena was the first to breach the 2016 CSSA, AAA Turf does not contest the merits of Helena's breach-of-contract claim.  Therefore, the district court did not err in granting judgment to Helena on its breach-of-contract claim.

## IV.

For the aforementioned reasons, we AFFIRM the district court's denial of AAA Turf's motion to amend and its grant of summary judgment to Helena and Simplot.