# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### November 3, 2014 Session

## RICHARD A. BERENT v. CMH HOMES, INC., ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 12C1524-II    Ward Jeffrey Hollingsworth, Judge**

───────────────────────

### No. E2013-01214-SC-R11-CV - Filed June 5, 2015

───────────────────────

In this appeal, we are asked to overrule established precedent regarding the circumstances under which an arbitration provision in an adhesive consumer contract is rendered unconscionable and unenforceable based on non-mutual remedies, i.e., mandating arbitration for the consumer but reserving a judicial forum for the merchant. This case involves an adhesion contract for the sale of a manufactured home. The contract includes an arbitration provision under which the sellers retain the right to seek relief in a judicial forum for limited purposes. After the buyer took possession of the home, he filed a lawsuit against the sellers for breach of contract, and the sellers filed a motion to compel arbitration. The trial court denied the motion to compel. In reliance on this Court's decision in Taylor v. Butler, 142 S.W.3d 277 (Tenn. 2004), the trial court held that the non-mutuality of remedies in the arbitration provision rendered it unconscionable and invalid. The Court of Appeals affirmed, also relying on Taylor. We granted permission to appeal to address whether the ruling in Taylor is preempted by the Federal Arbitration Act under the reasoning in AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011), and to address whether Taylor should be overruled or modified in light of the current majority view in other jurisdictions on the validity of arbitration contracts that include non-mutual remedies. We hold that Taylor did not adopt a *per se* rule that any degree of non-mutuality of remedies in an arbitration provision in an adhesion contract renders the provision unconscionable and unenforceable. Consequently, the ruling in Taylor is not preempted by federal law. In addition, after reviewing the law in other jurisdictions, we decline to overrule or modify the ruling in Taylor. Applying Taylor to the contract in this case, we conclude that the sellers' retention of a judicial forum for limited purposes does not render the arbitration agreement unconscionable. Accordingly, we reverse the decisions of the Court of Appeals and the trial court and remand to the trial court for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed and Case Remanded to the Circuit Court for Hamilton County**

HOLLY KIRBY, J., delivered the opinion of the Court, in which SHARON G. LEE C.J., and CORNELIA A. CLARK, GARY R. WADE, and JEFFREY S. BIVINS, JJ., joined.

William S. Rutchow and Jennifer S. Rusie, Nashville, Tennessee, for the appellants, CMH Homes, Inc., and Vanderbilt Mortgage and Finance, Inc.

Andrew S. Basler, Chattanooga, Tennessee, the appellee, Richard A. Berent.

## OPINION

### FACTS AND PROCEEDINGS BELOW

In December 2010, Plaintiff/Appellee Richard A. Berent bought a manufactured home in Hamilton County, Tennessee, from Defendant/Appellant CMH Homes, Inc. The parties executed a contract setting forth the terms of the sale and the parties' obligations (hereinafter "Installment Contract"). Mr. Berent financed the home through Appellant/Defendant Vanderbilt Mortgage and Finance, Inc., a subsidiary of CMH Homes. After the sale, CMH Homes assigned its rights under the Installment Contract to Vanderbilt Mortgage and Finance. In this opinion, we refer to CMH Homes and Vanderbilt Mortgage and Finance collectively as the "Sellers."

After installation of the home, Mr. Berent found that it was not installed to his satisfaction. According to Mr. Berent, the improper installation of the home resulted in drainage issues, mold, and a host of other problems. Despite his complaint, the problems were not remedied.

Frustrated, Mr. Berent decided to sue the Sellers. In December 2012, he filed a complaint against the Sellers in the Circuit Court of Hamilton County, Tennessee, alleging breach of contract, breach of express and implied warranties, fraud, and violation of the Tennessee Consumer Protection Act ("TCPA"). Mr. Berent asserted in his complaint that the Installment Contract on the sale of the manufactured home was void as unconscionable.

In response, the Sellers filed a motion to compel arbitration. The motion was based on the arbitration provision ("Arbitration Agreement") contained in the Installment Contract. The Arbitration Agreement included the following two paragraphs:

A. Agreement to Arbitrate:  Buyer and Seller (sometimes called the "Parties") agree to mandatory, binding arbitration ("Arbitration") of all disputes, claims, controversies, grievances, causes of action, including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, and, where applicable, administrative law claims, and any other matter in question ("Claims") arising from or relating to this Contract, any products/goods, services, insurance, or real property (including improvements to the real property) sold or financed under this Contract, any events leading up to this Contract, the collection and servicing of this Contract, and the interpretation, scope, validity or enforceability of this Contract (with the exception of this agreement to arbitrate, the "Arbitration Agreement"). The interpretation, scope, validity, or enforceability of this Arbitration Agreement or any clause or provision herein and the arbitrability of any issue shall be determined by a court of competent jurisdiction.

....

G. Exceptions:  Notwithstanding any other provision of this Arbitration Agreement, Buyer agrees that Seller may use judicial process (filing a lawsuit): (a) to enforce the security interest granted in this Contract or any related mortgage or deed of trust, and (b) to seek preliminary relief, such as a restraining order or injunctive relief, in order to preserve the existence, location, condition, or productive use of the Manufactured Home or other Collateral. Buyer and Seller also agree that this Arbitration Agreement does not apply to any Claim where the amount in controversy is less than the jurisdictional limit of the small claims court in the jurisdiction where the Buyer resides, *provided, however,* that the Parties agree that any such small claims Claim may only be brought on an individual basis and not as a class action. Bringing a court proceeding described in this paragraph G., however, shall not be a waiver of Seller's or Buyer's right to compel Arbitration of any other Claim that is covered by this Arbitration Agreement, including Buyer's counterclaim(s) in a suit brought by Seller.

(Underlining and emphasis in original).  Thus, the parties agreed to submit to arbitration all disputes "arising from or relating to" the Installment Contract, except that neither would be required to arbitrate small claims.  As a further exception, the Arbitration Agreement permitted the Sellers to file a lawsuit in court "to enforce the security interest" or "to seek preliminary relief" against Mr. Berent to preserve the manufactured home.

Mr. Berent argued against the motion to compel arbitration.  He contended that the

Arbitration Agreement is procedurally and substantively unconscionable and, therefore, unenforceable. In support of his argument, Mr. Berent relied primarily on this Court's decision in Taylor v. Butler. Specifically, Mr. Berent cited the holding in Taylor that the arbitration clause at issue in that case was "unconscionable and therefore void because it reserves the right to a judicial forum for [the defendant] while requiring [the plaintiff] to submit all claims to arbitration." Taylor, 142 S.W.3d at 287.

The trial court was persuaded by Mr. Berent's argument. It entered an order holding that the Arbitration Agreement "is similar to the one struck down in Taylor and is therefore to be considered unconscionable and unenforceable." Accordingly, the trial court denied the Sellers' motion to compel arbitration. The Sellers appealed as of right. See Tenn. Code Ann. § 29-5-319(a)(1) (2012).

The Court of Appeals affirmed the decision of the trial court. Berent v. CMH Homes, Inc., No. E2013-01214-COA-R3-CV, 2014 WL 813874, at *6 (Tenn. Ct. App. Feb. 28, 2014). The intermediate appellate court noted that Taylor had twice been applied "to invalidate an arbitration provision that had a similar one-sided effect of allowing one party access to the judicial system and restricting the other party's access." Id. at *4 (citing Brown v. Tenn. Title Loans, Inc., 216 S.W.3d 780, 786-87 (Tenn. Ct. App. 2006), and McGregor v. Christian Care Ctr. of Springfield, L.L.C., No. M2009-01008-COA-R3-CV, 2010 WL 1730131, at *6-7 (Tenn. Ct. App. Apr. 29, 2010)). Finding that the Arbitration Agreement signed by Mr. Berent had a "one-sided effect" that was "similar" to the agreements held unconscionable in Brown and McGregor, the Court of Appeals concluded that Taylor compelled a conclusion that the Arbitration Agreement is unconscionable. Berent, 2014 WL 813874, at *4.

In the Court of Appeals, the Sellers argued against the application of Taylor, claiming that the rule established in that case is preempted by the Federal Arbitration Act ("FAA"), relying primarily on the U.S. Supreme Court decision in AT&T Mobility LLC v. Concepcion. The Court of Appeals rejected that contention, reasoning that "the FAA does not preempt the application of a generally applicable state-law contract defense such as unconscionability." Berent, 2014 WL 813874, at *5.

The Sellers also argued that Taylor should be overturned as the law of the state because the view espoused therein is no longer the majority view. Id. The Court of Appeals declined to address this argument, commenting that it is not the prerogative of the intermediate appellate court to rule on the "continued viability" of a Supreme Court decision. Id. Therefore, the Court of Appeals affirmed the trial court's ruling that the Arbitration Agreement in this case is unconscionable and unenforceable. Id. at *6.

-4-

The Sellers sought permission to appeal to this Court to address the "viability" of our decision in Taylor, in light of the U.S. Supreme Court's decision in Concepcion and the majority view in other jurisdictions on non-mutual remedies in arbitration agreements. We granted permission to appeal to clarify Taylor and its application to the facts of this case.

**ANALYSIS**

In this appeal, the Sellers argue that this Court should reconsider, and ultimately overrule, the decision in Taylor v. Butler, 142 S.W.3d 277 (Tenn. 2004). They characterize Taylor as having created a *per se* rule that any degree of non-mutuality in the remedies available to the parties in an adhesive arbitration agreement renders the arbitration agreement unconscionable and, therefore, unenforceable. The Sellers argue that the *per se* rule adopted in Taylor runs afoul of the U.S. Supreme Court's decision in AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011), which held that any state rule that specifically disfavors arbitration agreements is preempted by the Federal Arbitration Act. 131 S. Ct. at 1746-48. Even if the ruling in Taylor is not preempted by federal law, the Sellers argue, this Court should reconsider Taylor. They note that, since Taylor was decided, most of the cases on which Taylor relied have been overruled or abrogated and that "the vast majority of jurisdictions" now hold that non-mutuality of remedies, standing alone, does not render an arbitration agreement unconscionable. In the alternative, should the Court not choose to overrule Taylor, the Sellers argue, it should nevertheless reverse the trial court's decision and hold that the Arbitration Agreement at issue is enforceable.

In response, Mr. Berent argues that Taylor does not create a *per se* rule that *any* degree of non-mutuality of remedies in an arbitration agreement renders it unconscionable. Mr. Berent insists that, under Taylor, courts are to assess the fairness of arbitration agreements on a case-by-case basis to determine validity based on any state common-law defense, such as fraud, duress, or unconscionability, so Taylor need not be reconsidered. Applying Taylor here, Mr. Berent urges this Court to hold that the Arbitration Agreement in the instant case is unconscionable and unenforceable or to at least to remand the issue to the trial court for further proceedings on the issue.

The issues in this case do not involve disputed facts. When the facts are not disputed, we review the denial of a motion to compel arbitration *de novo*, with no presumption of correctness in the trial court's decision. See Owens v. Nat'l Health Corp., 263 S.W.3d 876, 882 (Tenn. 2007); McGregor, 2010 WL 1730131, at *3. The issue of whether an arbitration clause is unconscionable under applicable contract principles is also a question of law, subject to *de novo* review. See Owens, 263 S.W.3d at 882; Spann v. Am. Exp. Travel Related Servs. Co., 224 S.W.3d 698, 707 (Tenn. Ct. App. 2006). Accordingly, our review of all of the issues in this case is *de novo*, according no deference to the trial court's decision.

**Taylor v. Butler**

We start with an overview of Taylor v. Butler. In Taylor, the plaintiff purchased a car from the defendant car dealer. The parties signed a purchase contract that included an arbitration provision. The arbitration provision stated that all disputes between the parties arising from the sale of the car were to be settled by binding arbitration under the Federal Arbitration Act. Taylor, 142 S.W.3d at 280. The provision carved out an exception for the defendant car dealer, however, stating that the dealer could file a lawsuit in state court to "pursue recovery of the vehicle under the Tennessee Uniform Commercial Code and Collection of Debt due." Id. at 284 (quoting the buyer's order).

After signing the purchase contract with the arbitration provision, the plaintiff put a down payment on the car and financed the remainder of the purchase price through the defendant car dealer. The defendant delivered the car to the plaintiff purchaser and, according to the plaintiff, told her that her request for long-term financing had been approved. A week later, the defendant notified the plaintiff that, in fact, her request for long-term financing had not been approved. The defendant dealer then rescinded the sale and repossessed the car, along with the plaintiff's personal items that were in the car. Despite the repossession of the car, the defendant dealer retained the plaintiff's down payment. Id. at 280-81.

The plaintiff purchaser in Taylor filed suit in chancery court against the defendant car dealer. She alleged in her complaint that the defendant violated the TCPA and committed fraud in the inducement of the purchase contract. The defendant filed a motion to dismiss the lawsuit based on the arbitration provision in the purchase contract. The trial court granted the motion to dismiss, and the plaintiff purchaser appealed. The Court of Appeals reversed. It declined to compel the plaintiff to arbitrate a claim "pursuant to an arbitration provision that was fraudulently induced." Id. at 281. The defendant car dealer sought permission to appeal to this Court, which was granted.

This Court affirmed the decision of the intermediate appellate court, albeit on a different basis. It first held that, under the FAA, claims of fraudulent inducement are subject to arbitration unless the fraudulent inducement claim goes directly to the arbitration provision itself. Id. at 282 (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967)). It then went on to address the plaintiff's other argument, that the arbitration provision in the purchase contract was unenforceable as unconscionable.[1] The plaintiff contended that the arbitration provision was unconscionable because it provided for non-mutual remedies to the contracting parties, that is, it permitted the defendant car dealer to file

_____

[1] The Court noted that the issue of whether a valid agreement to arbitrate exists should be decided by the courts before submitting the remainder of the claim to arbitration. Taylor, 142 S.W.3d at 283-84.

a lawsuit in state court for its claims, but it required the plaintiff to arbitrate all of her claims. Id. at 283.

The Taylor Court noted that the "savings clause" in the FAA requires enforcement of arbitration agreements save "upon such grounds as exist at law or in equity for the revocation of any contract." Id. at 284 (quoting 9 U.S.C. § 2). Thus, the FAA permits states to regulate, and even invalidate, an arbitration agreement by application of general state-law contract defenses such as fraud, duress, or unconscionability. Id. at 284 (quoting Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). The Taylor Court then summarized the doctrine of unconscionability:

> If a contract or term thereof is unconscionable at the time the contract is made, a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term. *See* Restatement (Second) of Contracts § 208 (1981). "The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect. Relevant factors include weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes. . . ." Restatement (Second) of Contract[s] § 208, cmt. a (1981).

> Enforcement of a contract is generally refused on grounds of unconscionability where the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984) (quoting *In re Friedman*, 64 A.D.2d 70, 407 N.Y.S.2d 999 (1978)); *see also Aquascene, Inc. v. Noritsu Am. Corp.*, 831 F. Supp. 602 (M.D. Tenn. 1993). An unconscionable contract is one in which the provisions are so one-sided, in view of all the facts and circumstances, that the contracting party is denied any opportunity for meaningful choice. *Id.*

Id. at 285.

In addressing the plaintiff's argument, the Taylor Court noted that the issue presented—framed as "whether an arbitration provision in a consumer contract which reserves a right to access to the courts only for the merchant and not the consumer is voidable on the basis of unconscionability"—was an issue of first impression in Tennessee. Id. For guidance, then, the Court looked to cases from other jurisdictions that had addressed so-called "one-sided arbitration provisions." Id. at 285-86 (discussing Iwen v. U.S. W. Direct, 977 P.2d 989,

996 (Mont. 1999); Arnold v. United Cos. Lending Corp., 511 S.E.2d 854, 862 (W. Va. 1998)). It described the majority view as holding that an arbitration agreement in which the drafter of the agreement reserves the right to a judicial forum but limits the consumer to arbitration of his claims is "unconscionable and oppressive" because it is "one-sided and unreasonably favorable to the drafter." Id. at 285-86 (quoting Iwen, 977 P.2d at 996); see also Showmethemoney Check Cashers, Inc. v. Williams, 27 S.W.3d 361, 366 (Ark. 2000); Williams v. Aetna Fin. Co., 700 N.E.2d 859, 866-67 (Ohio 1998); Lytle v. CitiFinancial Servs., Inc., 810 A.2d 643, 665 (Pa. Super. Ct. 2002)). The Court described the minority view as "reach[ing] the opposite conclusion," and found "the majority view to be more persuasive." Taylor, 142 S.W.3d at 286 n.4 (rejecting cases adopting the "minority" view, citing Stout v. J.D. Byrider, 228 F.3d 709, 715-16 (6th Cir. 2000); Conseco Fin. Serv. Corp. v. Wilder, 47 S.W.3d 335, 342-43 (Ky. Ct. App. 2001)).

Turning to the agreement at issue, the Taylor Court observed that the buyer's order, in which the arbitration provision was included, was a contract of adhesion, in that it was "a standardized contract form that was offered on essentially a 'take it or leave it' basis without affording [the plaintiff] a realistic opportunity to bargain." Id. at 286. It allowed that contracts of adhesion are not *per se* invalid under Tennessee law, but cautioned that such a contract may be unenforceable if it is "beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." Id. (citing Buraczynski v. Eyring, 919 S.W.2d 314, 320 (Tenn. 1996)). It emphasized: "Courts will not enforce adhesion contracts which are oppressive to the weaker party or which serve to limit the obligations and liability of the stronger party." Id. The Court commented that the arbitration provision in the buyer's order permitted the defendant car dealer to sue the purchaser in court for any claim to recover the vehicle or collect a debt, surmising that this would encompass virtually any claim the car dealer might have against the purchaser. Id. In contrast, the plaintiff purchaser was left with arbitration as the only available forum. Id. Considering all of these factors, the Court found that the arbitration provision was "unreasonably favorable to [the car dealer] and oppressive to [the plaintiff]," and so held it to be "invalid and unenforceable." Id. at 286-87.

A dissenting opinion was filed in Taylor, asserting that "the mere fact that there are different forums available to the parties in this case does not make the arbitration provision unconscionable." Taylor, 142 S.W.3d at 287 (Holder, J., dissenting). The dissent was of the view that "an arbitration provision granting one party the option to litigate its claims while binding the other party to arbitrate all of its claims is not unconscionable" because the "lack of symmetry does not rise to the level of being shocking or unfairly oppressive." Id. at 288 (Holder, J., dissenting).

-8-

## Preemption

Initially, the Sellers characterize Taylor as having adopted a *per se* rule that any non-mutuality of remedies in an adhesive arbitration agreement renders the agreement unenforceable. Based on this characterization, they argue that Taylor's holding is preempted by the FAA because it constitutes a state rule that disfavors arbitration agreements, relying primarily on Concepcion. In response, Mr. Berent asserts that Taylor does not create a *per se* rule against non-mutual remedies in arbitration agreements, so its holding is not preempted by the FAA.

By way of background, we note that the doctrine of preemption is rooted in the Supremacy Clause of the United States Constitution:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2. "As 'the supreme law of the land,' federal law sometimes preempts, or supplants, otherwise permissible state laws, rendering them inert and ineffectual. The scope of this preemption is a federal question, and thus the boundaries of the preemption doctrine are prescribed by United States Supreme Court precedent." Morgan Keegan & Co. v. Smythe, 401 S.W.3d 595, 605 (Tenn. 2013) (citing Leggett v. Duke Energy Corp., 308 S.W.3d 843, 852-54 (Tenn. 2010)).

Here, the Sellers argue that our ruling in Taylor is preempted by the FAA, because it conflicts with the FAA's policy favoring arbitration. The FAA does not expressly preempt state law, nor does it "reflect a congressional intent to occupy the entire field of arbitration." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 477 (1989). Nevertheless, a state law may be "pre-empted to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"[2] Id. (quoting Hines v.

---

[2] English courts traditionally disfavored arbitration agreements and refused to enforce them. Early American courts adopted this hostility toward arbitration agreements, and the unwillingness to enforce arbitration agreements became firmly embedded into our common law. Scherk v. Alberto-Culver Co., 417 U.S. 506, 510 n.4 (1974). "The courts . . . felt that the precedent was too strongly fixed to be overturned without legislative enactment." Southland Corp. v. Keating, 465 U.S. 1, 13 (1984) (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess. 1-2 (1924)).

Davidowitz, 312 U.S. 52, 67 (1941)). In Volt, the U.S. Supreme Court capsulized Congress's objective in enacting the FAA:

> The FAA was designed "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate," and to place such agreements " 'upon the same footing as other contracts.' " While Congress was no doubt aware that the Act would encourage the expeditious resolution of disputes, its passage "was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered." Accordingly, we have recognized that the FAA does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.

Id. at 478 (citations omitted); see Prima Paint Corp., 388 U.S. at 405 n.12 (noting that the FAA was designed "to make arbitration agreements as enforceable as other contracts, but not more so").

In Concepcion, the U.S. Supreme Court addressed whether the FAA preempted an established California common-law rule that a class-action waiver in an arbitration agreement is unconscionable and renders the arbitration agreement invalid.[3] Concepcion, 131 S. Ct. at 1746 (citing the rule in Discover Bank v. Superior Court, 113 P.3d 1100, 1110 (Cal. 2004)). Ultimately, it held that the California common-law rule was contrary to the purpose of the FAA, because arbitration is not well-suited for class actions. Therefore, "[r]equiring the availability of classwide arbitration interferes with the fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." Id. at 1748. The Court explained that "agreements to arbitrate [may] be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but *not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue*." Id. at 1746 (emphasis added; internal quotations omitted) (quoting Doctor's Assocs., Inc. v. Lombardi, 517 U.S. 681, 687 (1996)). Thus, it held that the California rule that class-action waivers are unconscionable was preempted by the FAA because the common-law rule stood "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. at 1753 (quoting Hines, 312 U.S. at 67).

---

[3] Under the so-called Discover Bank rule, class-action waivers in consumer arbitration agreements were deemed unconscionable if (1) the waiver was contained in an adhesion contract, (2) disputes between the parties would likely have involved small amounts of damages, and (3) the party with inferior bargaining power alleged a deliberate scheme to defraud. Concepcion, 131 S. Ct. at 1746 (citing Discover Bank v. Superior Court, 113 P.3d 1100, 1110 (Cal. 2004)).

Obviously, the facts in Concepcion involved only a common-law rule regarding the conscionability of class-action waivers in arbitration agreements. Since Concepcion was decided, however, a number of courts have considered whether, under the rule in Concepcion, the FAA preempts a state common-law rule that non-mutuality of remedies in the arbitration provision of an adhesive contract is *per se* unconscionable and renders the arbitration provision unenforceable. Some have held that the FAA *does not* preempt such a state common-law rule. See Noohi v. Toll Bros., Inc., 708 F.3d 599, 611-12 (4th Cir. 2013) (interpreting Maryland law); Alltell Corp. v. Rosenow, No. CV-13-995, 2014 WL 4656609, at *5-6 (Ark. Sept. 18, 2014). Others addressing the same issue have concluded that the FAA *does* preempt a state common-law rule requiring strict mutuality in an arbitration agreement. THI of N.M. at Hobbs Ctr., LLC v. Patton, 741 F.3d 1162, 1170 (10th Cir. 2014) (interpreting New Mexico law); Torrence v. Nationwide Budget Fin., 753 S.E.2d 802, 812 (N.C. 2014); see Mortensen v. Bresnan Commc'ns, LLC, 722 F.3d 1151, 1154 (9th Cir. 2013) (holding "that the FAA preempts Montana's reasonable expectations/fundamental rights rule" set forth in Iwen, 977 P.2d at 995).

To determine whether the ruling in Taylor is preempted under the FAA, it is first necessary for us to clarify whether Taylor adopted a strict, *per se* rule that any degree of non-mutuality in the parties' remedies in an arbitration agreement renders the agreement unconscionable and unenforceable. Taylor did not include an express statement to that effect, so we look to its overall analysis in making this determination.

On the question of unconscionability, Taylor framed the issue simply as "whether an arbitration provision in a consumer contract which reserves a right to access to the court only for the merchant" is unconscionable. Taylor, 142 S.W.3d at 285. It then discussed cases from other jurisdictions that appeared to adhere to a more rigid *per se* rule that any degree of non-mutuality of remedies in an arbitration agreement is unconscionable. Taylor, 142 S.W.3d at 285-86 (discussing Arnold, 511 S.E.2d at 861-62, and Iwen, 977 P.2d at 996). The majority also cited cases reaching "the opposite conclusion" and described them as representing the "minority of courts." Taylor, 142 S.W.3d at 286 n.4 (citing Stout, 228 F.3d at 715-16, and Wilder, 47 S.W.3d at 342-43). The majority in Taylor commented, "We find the majority view to be more persuasive." Taylor, 142 S.W.3d at 286 n.4. The Sellers apparently rely on this part of the opinion in Taylor to characterize it as adopting a *per se* rule that any degree of non-mutuality of remedies will render an arbitration provision unconscionable.

We note, however, that Taylor did not discuss whether the same result would be reached for an arbitration agreement containing *any* degree of non-mutuality of remedies. Under Tennessee law, the question of whether a given contract is unconscionable depends on "all the facts and circumstances of a particular case." Owens, 263 S.W.3d at 889. Taylor emphasized that principle, stating that a contract will be deemed unconscionable if "the

provisions are so one-sided, *in view of all the facts and circumstances*, that the contracting party is denied any opportunity for meaningful choice." Taylor, 142 S.W.3d at 285 (emphasis added). The Court observed that the arbitration provision was in an adhesive contract, where the consumer was given only the choice to "take it or leave it." Taylor stressed how completely one-sided the arbitration provision was. It noted that, although the consumer was required to arbitrate any claim she might have against the merchant, the merchant retained the right to file an action in court for "practically all claims that it could have" against the consumer. Id. at 286. The Court added: "Indeed, it is hard to imagine what other claims [the merchant] would have against [the consumer,] other than" the claims for which the merchant retained a judicial forum. Id. To be sure, Taylor underscored the importance of mutuality of remedies in evaluating whether an adhesive consumer contract is unconscionable. In analyzing the issue, however, it clearly took into account the particulars of the contract at issue, such as the degree of non-mutuality and the kinds of claims for which the merchant retained a judicial forum.

Tennessee courts that have applied Taylor have not applied it as adopting a *per se* rule. In two cases addressing the same issue, the appellate courts followed the legal framework of Taylor and applied it to the specific arbitration agreements presented. In Brown v. Tennessee Title Loans, Inc., the Court of Appeals held that an arbitration provision in the plaintiffs' loan documents was unconscionable because the lender (the drafter) reserved its right to a judicial forum for all intents and purposes but limited the plaintiffs solely to arbitration. Brown, 216 S.W.3d at 786. Similarly, in McGregor v. Christian Care Center of Springfield, L.L.C., the appellate court held that an arbitration provision in a nursing home agreement was unconscionable when it required the resident to submit all claims to arbitration but reserved a judicial forum for its claim for damages against the resident. McGregor, 2010 WL 1730131, at *6. Both courts noted the similarities between the arbitration provisions at issue and the one in Taylor. Neither applied a *per se* rule invalidating an arbitration agreement that contained any degree of non-mutuality of remedies. In fact, in Brown, the Court of Appeals relied in part on a case decided in Wisconsin in which the Court stated that "a one-sided arbitration provision may not be unconscionable under the facts of all cases." Brown, 216 S.W.3d at 787 (quoting Wisconsin Auto Title Loans, Inc. v. Jones, 714 N.W.2d 155, 173 (Wisc. 2006)).

Taylor has been applied as well in other contract cases, outside the realm of arbitration agreements, in which unconscionability or a contract of adhesion was at issue, and none characterized Taylor as having adopted a *per se* rule. See, e.g., Trigg v. Little Six Corp., No. E2013-01929-COA-R9-CV, 2014 WL 3734577, at *5, 10 (Tenn. Ct. App. July 28, 2014); Vintage Health Res., Inc. v. Guiangan, 309 S.W.3d 448, 461-62 (Tenn. Ct. App. 2009); Reagan v. Kindred Healthcare Operating, Inc., No. M2006-02191-COA-R3-CV, 2007 WL 4523092, at *11-12 (Tenn. Ct. App. Dec. 20, 2007); Robert J. Denley Co., Inc. v. Neal Smith

-12-

<u>Constr. Co.</u>, No. W2006-00629-COA-R3-CV, 2007 WL 1153121, at *7 (Tenn. Ct. App. Apr. 19, 2007).

We concede that the Court's opinion in <u>Taylor</u> is not a model of clarity. The framing of the issue, coupled with excerpts from the analysis taken out of context, could be construed as endorsing a *per se* rule that an arbitration agreement in an adhesive consumer contract that reserves a judicial forum to the merchant for any purpose will be deemed unconscionable. Viewing the <u>Taylor</u> analysis in its entirety, however, yields a different conclusion. The analysis included a thorough review of Tennessee contract law and a detailed discussion of the particulars of the arbitration provision at issue. It is clear that <u>Taylor</u> applied the doctrine of unconscionability in a nuanced manner, weighing the degree of one-sidedness in the arbitration provision as an important factor, but not the only factor, and viewing the arbitration provision in the context of the overall contract and the surrounding circumstances. As stated by one commentator in an early discussion of unconscionability: "It is not possible to define unconscionability. It is not a concept, but a determination to be made in light of a variety of factors not unifiable into a formula." James J. White & Robert S. Summers, Uniform Commercial Code § 4-3 (2d ed.), <u>quoted in</u> <u>Baptist Mem'l Hosp. v. Argo Constr. Corp.</u>, 308 S.W.3d 337, 346 n.5 (Tenn. Ct. App. 2009). Thus, <u>Taylor</u>'s application of the doctrine of unconscionability to this Arbitration Agreement is consistent with the application of the doctrine to any contract.

We are mindful that lack of mutuality of remedies in a contract is a type of "one-sidedness" that is likely peculiar to arbitration agreements. We must take care to consider the admonition in <u>Concepcion</u> that, under the doctrine of preemption, state courts cannot adopt "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." <u>Concepcion</u>, 131 S. Ct. at 1746. At the same time, <u>Concepcion</u> makes it clear that state courts may apply standard common-law defenses to arbitration agreements, including unconscionability. <u>Id.</u> Unconscionability in any type of agreement normally includes consideration of how "one-sided" the contract is. <u>See, e.g.</u>, <u>Vintage</u>, 309 S.W.3d at 461-62 (considering the one-sidedness of an employment contract, citing <u>Taylor</u>); <u>Baines v. Baines</u>, No. E2009-00180-COA-R3-CV, 2009 WL 3806131, at *6-7 (Tenn. Ct. App. Nov. 13, 2009) (analyzing an agreement to provide marital support, citing <u>Taylor</u>). Consequently, a determination of unconscionability in the context of an arbitration agreement will likely include consideration of the remedies available to each party to the agreement. Nevertheless, the fact that <u>Taylor</u> makes mutuality of remedies an important consideration in determining unconscionability does not overly burden arbitration agreements, so long as all of the circumstances of the particular agreement are taken into account.

Thus, the FAA permits courts to invalidate an arbitration agreement for reasons such as unconscionability so long as they "place arbitration agreements on an equal footing with

other contracts." Concepcion, 131 S. Ct. at 1745. Taylor does just that. Cf. Noohi, 708 F.3d at 612-13 (upholding Maryland's law as not preempted because it does not bar categories of arbitration claims and it treats arbitration agreements like any other contract); Alltel Corp., 2014 WL 4656609, at *5 ("[W]ere we not to consider mutuality or other elements of a contract when examining the validity of an arbitration agreement, . . . we would be treating arbitration agreements differently from other contracts."). Accordingly, we hold that the ruling in Taylor is not preempted by the FAA.

## Public Policy

We next address Sellers' argument that we should overrule Taylor based on public policy considerations. The Sellers maintain that Taylor created a *per se* rule that is now followed in only a minority of jurisdictions, and note that some of the cases cited with approval in Taylor have now been overruled or abrogated. In essence, the Sellers contend that, in the development of the common law on arbitration agreements, Tennessee has been left behind, because a majority of jurisdictions that have addressed the issue since Taylor was decided in 2004 have held that lack of mutuality in the remedies available to parties to an arbitration agreement does not render the arbitration provision unconscionable.

We have already addressed the premise of the Sellers' argument by clarifying that Taylor did not, in fact, adopt a *per se* rule that any degree of non-mutuality of remedies in an arbitration provision in an adhesive consumer contract renders the arbitration provision unconscionable and unenforceable. However, we go on to consider the Sellers' other arguments.

First, we acknowledge that some of the cases cited favorably in Taylor have been abrogated by subsequently decided cases in their respective jurisdictions. For example, in Dan Ryan Builders, Inc. v. Nelson, West Virginia's highest court abrogated the holding in Arnold v. United Companies Lending Corp. to the extent that it created a *per se* rule against non-mutuality in arbitration agreements, suggesting that such a rule might be preempted by the FAA.[4] Dan Ryan Builders, Inc. v. Nelson, 737 S.E.2d 550, 560 (W. Va. 2012) (abrogating Arnold, 511 S.E.2d at 857-58); see also Miller v. Equifirst Corp. of W. Va., No. 2:00-0335, 2006 WL 2571634, at *11 (S.D. W. Va. Sept. 5, 2006) (distinguishing Arnold). Similarly, the Supreme Court of Pennsylvania abrogated the holding in Lytle v. CitiFinancial Services, Inc. that non-mutuality in arbitration agreements was presumptively unconscionable, because that

---

[4] The reasoning in Arnold was specifically quoted and relied upon as support for our decision in Taylor. See Taylor, 142 S.W.3d at 285.

-14-

rule "swept too broadly."[5]  Salley v. Option One Mortg. Corp., 925 A.2d 115, 129 (Pa. 2007) (abrogating Lytle, 810 A.2d at 665).  In addition, the Ninth Circuit called into question the validity of Iwen, holding that Montana's "reasonable expectations/fundamental rights rule" was likely preempted by the FAA under the rule in Concepcion because it "disproportionally affect[ed] arbitration agreements."[6]  Mortensen, 722 F.3d at 1161 (questioning the validity of Iwen, 977 P.2d at 995).  Notably, however, these cases cited in Taylor were not overruled; they were either limited on their facts or called into question based on the concern that a *per se* rule would be preempted by the FAA.  Moreover, as we have clarified above, the analysis employed in Taylor is not inconsistent with the modified rule adopted in the jurisdictions that abrogated cases cited favorably in Taylor.  Therefore, we do not consider the legal foundation of Taylor to have been completely undermined.

We next consider the Sellers' argument that Taylor is now out of step with the approach utilized in the majority of jurisdictions.  From our examination of cases from other jurisdictions, there appears to be little uniformity among courts regarding their policies on the enforceability of an arbitration provision containing non-mutual remedies, specifically in the context of an adhesion contract.[7]  This is likely because states have differing views about unconscionability as the doctrine is applied to arbitration agreements and because the cases involve a wide variety of arbitration agreements.  Thus, any attempt to synthesize the cases neatly into a "majority" and a "minority" view must necessarily founder.  Nevertheless, some general observations can be made.

Some courts have determined that complete mutuality in an arbitration agreement is not required so long as the agreement is supported by adequate  consideration.  See Harris v. Green Tree Fin. Corp., 183 F.3d 173, 180-81 (3d Cir. 1999) (interpreting Pennsylvania law); Barker v. Golf U.S.A., Inc., 154 F.3d 788, 792 (8th Cir.1998) (interpreting Oklahoma law); Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 453 (2d Cir. 1995) (interpreting Connecticut law); Coup v. Scottsdale Plaza Resort, LLC, 823 F. Supp. 2d 931, 952 (D. Ariz. 2011); Pate v. Melvin Williams Manufactured Homes, Inc. (In re Pate), 198 B.R. 841, 844-45 (S.D. Ga. 1996); Willis Flooring, Inc. v. Howard S. Lease Constr. Co. & Assocs., 656 P.2d 1184, 1185 (Alaska 1983); Rains v. Found. Health Sys. Life & Health, 23 P.3d 1249, 1255 (Colo. App.

---

[5]Lytle was cited with approval in Taylor.  Taylor, 142 S.W.3d at 286.

[6]Iwen was quoted with approval in Taylor.  Taylor, 142 S.W.3d at 285-86.

[7] Some jurisdictions have inconsistent rules among their own courts.  Compare Armendariz v. Found. Health Psychare Servs., Inc., 6 P.3d 669, 771 (Cal. 2000) (holding that an arbitration agreement must have "a modicum of bilaterality" in order to be conscionable), with Gray v. Conseco, Inc., No. SA CV 00-322DOC(EEX), 2000 WL 1480273, at *4-5 (C.D. Cal. 2000) (disagreeing with Armendariz "in so far as it held that its rule did not single out and impose a special burden on arbitration agreements").

2001); Schreier v. Solomon, No. 277687, 2008 WL 4330192, at *3-4 (Mich. Ct. App. Sept. 23, 2008); State ex rel Vincent v. Schneider, 194 S.W.3d 853, 859 (Mo. 2006); Sablosky v. Edward S. Gordon Co., 535 N.E.2d 643, 646 (N.Y. Ct. App. 1989); see also In re FirstMerit Bank, N.A., 52 S.W.3d 749, 757 (Tex. 2001) (noting that "[m]ost federal courts . . . have rejected" claims of unconscionability because "an arbitration clause does not require mutuality of obligation, so long as the underlying contract is supported by adequate consideration"). These courts appear less concerned with whether the arbitration provision is contained in an adhesive contract. If there is consideration to support the entire contract, they reason, the arbitration provision is not invalid simply because the choice of forum is not identical for the parties. But see Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1131 (7th Cir.1997) (interpreting Indiana law and finding lack of consideration when the employee, but not the employer, was required to submit any claims to arbitration); Vassilkovska v. Woodfield Nissan, Inc., 830 N.E.2d 619, 625 (Ill. App. Ct. 2005) (holding that, because there was no mutual promise to arbitrate, there was no consideration for the arbitration agreement).

Other courts have upheld arbitration agreements containing non-mutual remedies because they do not deem lack of symmetry in choice of forum to be unconscionable. See, e.g., Blue Cross Blue Shield of Ala. v. Rigas, 923 So. 2d 1077, 1087 (Ala. 2005) (citing Green Tree Fin. Corp. of Ala. v. Wampler, 749 So. 2d 409, 416 (Ala. 1999)); Lackey v. Green Tree Fin. Corp., 498 S.E.2d 898, 902-03 (S.C. Ct. App. 1998). These courts reason that a contrary rule would impose a special burden on agreements to arbitrate and, therefore, would conflict with the federal policy favoring arbitration.

Still other courts address the issue of whether an arbitration agreement is unconscionable based on a flexible, case-by-case approach, "taking into consideration all of the facts and circumstances of a particular case." Dan Ryan Builders, Inc., 737 S.E.2d at 558; Brewer v. Mo. Title Loans, 364 S.W.3d 486, 495-96 (Mo. 2012); Vincent v. Neyer, 745 N.E.2d 1127, 1133 (Ohio Ct. App. 2000) (declining to extend Williams v. Aetna Fin. Co., 700 N.E.2d 859 (Ohio 1998)[8]); Motsinger v. Lithia Rose-FT, Inc., 156 P.3d 156, 163 (Or. Ct. App. 2007); Salley, 925 A.2d at 123-24; Jones, 714 N.W.2d at 173; see also Hagy v. Demers & Adams, LLC, No. 2:11-cv-530, 2012 WL 359577, at *8 (S.D. Ohio Feb. 2, 2012) (indicating that lack of mutuality does not necessarily indicate substantive unconscionability, but "[t]hat does not mean, of course, that an arbitration clause can never be so lacking in fairness, due to blatant one-sidedness, that it can escape being deemed unconscionable"). These courts consider factors such as the respective positions of the parties, whether the contract itself is procedurally unconscionable (e.g., contract of adhesion), whether there is a business justification for the one-sidedness, and the like.

_____

[8] Williams leaned toward a *per se* unconscionability rule, and it was cited with approval in Taylor. Taylor, 142 S.W.3d at 286.

-16-

Lastly, a few jurisdictions adhere to what amounts to a *per se* rule, that any degree of non-mutuality of remedy included in an arbitration provision in an adhesion contract renders the arbitration provision unconscionable and unenforceable.[9] See, e.g., The Money Place, LLC v. Barnes, 78 S.W.3d 714, 716-17 (Ark. 2002); Armendariz v. Found. Health Psychcare Servs., Inc., 6 P.3d 669, 691-92 (Cal. 2000); Iwen, 977 P.2d at 995-96.[10] Courts adhering to this view generally emphasize the fact that, in a contract of adhesion, the weaker party is powerless to bargain on his own behalf, and it is unfair for the stronger party to reserve for itself a judicial forum for most—or all—of its claims while requiring the weaker to waive any right to a judicial forum.

Having held that Taylor does not, in fact, establish a *per se* rule against any degree of non-mutuality in adhesive arbitration agreements, we respectfully disagree with the Sellers' argument that Tennessee's approach is inconsistent with the majority of other jurisdictions. Clearly, the Taylor Court stressed the importance of mutuality of remedies in determining whether an arbitration agreement in an adhesion contract is unconscionable. We recognize that not all courts in other jurisdictions agree. Indeed, some courts have aligned with the view expressed in the dissenting opinion in Taylor. Many courts, however, employ an approach not unlike the analysis in Taylor. The Taylor decision relied on longstanding principles of contract law, specifically the doctrine of unconscionability as applied to contracts of adhesion, to hold that the arbitration provision at issue in that case was "unreasonably favorable to [the defendant merchant] and oppressive to [the plaintiff consumer]." Taylor, 142 S.W.3d at 287. Thus, we do not deem it necessary or prudent to overrule or modify our ruling in Taylor at this time.

## Application of Taylor to Arbitration Agreement

With the ruling in Taylor intact, we now apply it to review the trial court's decision.

---

[9] Although Arkansas has consistently required mutuality in arbitration agreements, at least two unpublished cases from Arkansas federal courts have held that non-mutual arbitration agreements are enforceable if supported by adequate consideration, reasoning that a contrary rule would conflict with the purposes of the FAA. See Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC, 588 F.3d 963, 966-67 (8th Cir. 2009) (recognizing Enderlin v. XM Satellite Radio Holdings, Inc., No. 4:06-CV-0032, 2008 WL 830262 (E.D. Ark. Mar. 25, 2008), and Scherrey v. A.G. Edwards & Sons, Inc., No. 02-2286, 2003 U.S. Dist. LEXIS 11010, at *10 (W.D. Ark. Apr. 15, 2003)).

[10] As we have noted, the Ninth Circuit has held that the "reasonable expectations/fundamental rights rule" of Montana is preempted by the FAA under the reasoning in Concepcion. Mortensen, 722 F.3d at 1154. The Supreme Court of Montana, however, has not addressed the continued validity of Iwen since Mortensen.

To briefly recap, the arbitration provision at issue in <u>Taylor</u> was contained in a contract of adhesion between a car dealer and a purchaser. It required the plaintiff purchaser to arbitrate all disputes, but reserved for the defendant car dealer the right to seek redress in a judicial forum for practically all claims it might have against the purchaser. <u>Id.</u> at 284. Considering the fact that the arbitration provision was included in a contract of adhesion, and that the terms overall were "unreasonably favorable to [the car dealer] and oppressive to [the purchaser]," <u>Taylor</u> held that it was unconscionable, and therefore invalid. <u>Id.</u> at 286-87.

In the instant case, the Arbitration Agreement was part of the Installment Contract for sale of the manufactured home to Mr. Berent. Like the buyer's order in <u>Taylor</u>, the Installment Contract can fairly be characterized as a contract of adhesion; it was presented to Mr. Berent on a "take it or leave it" basis, without giving Mr. Berent any realistic bargaining power.

While that fact is significant, it is not dispositive. As recognized in <u>Taylor</u>, contracts of adhesion are not *per se* unenforceable in Tennessee. Rather, the enforceability of a contract of adhesion "depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." <u>Id.</u> at 286. The terms of the contract in <u>Taylor</u> differ significantly from the terms of the Arbitration Agreement at issue in this case. In <u>Taylor,</u> the arbitration provision was *completely* one-sided, and the opinion contains no indication that the defendant car dealer offered any justification for the imbalance. In contrast, in this case, the Arbitration Agreement requires both parties to submit their disputes (except for small claims) to arbitration.[11] As an exception to this general rule, the Sellers are permitted to seek relief in a judicial forum "to enforce their security interest" in the manufactured home or "to seek preliminary relief." While the exact meaning of these terms is subject to some interpretation, the provisions appear to state generally that the Sellers can file an action in court to foreclose on the property, but any deficiency against Mr. Berent must be sought through arbitration.[12]

The Sellers point out that both Mr. Berent and the Sellers have the option of seeking injunctive relief in court pursuant to the Consumer Rules of the American Arbitration Association ("AAA Rules"), so long as that relief is in support of arbitration. <u>See</u> AAA Rules

---

[11] Mr. Berent does not argue that the "small claims" exception renders the arbitration provision unconscionable.

[12] At oral argument, counsel for the Sellers conceded that, under the terms of the Arbitration Agreement, any claim by the Sellers for a deficiency judgment against Mr. Berent must be filed in an arbitration proceeding.

R-37(d).[13] They claim that this provides some balance to any one-sidedness in the Arbitration Agreement. But the Sellers also point out that the AAA Rules do not give the arbitrator the authority to grant certain types of relief to protect their security interest, so the availability of a judicial forum for foreclosures would protect both parties. See, e.g., Torrance v. Aames Funding Corp., 242 F. Supp. 2d 862, 872 (D. Or. 2002); Walther v. Sovereign Bank, 872 A.2d 735, 749 (Md. 2005). Thus, they argue that the exception for judicial foreclosure proceedings is necessary to protect their security interest in the manufactured home. Preservation of the Sellers' security interest while the parties arbitrate their monetary disputes, the Sellers claim, provides a business justification for the limited exception for foreclosure proceedings.

In other jurisdictions, this type of "carve-out" has generally been upheld as reasonable and not unfair to the consumer. See Erving v. Va. Squires Basketball Club, 468 F.2d 1064, 1067 (2d Cir. 1972) ("[T]he only way to preserve the status quo during the pendency of the arbitration is by the granting of injunctive relief."); Lawrence v. Comprehensive Bus. Servs. Co., 833 F.2d 1159, 1163 (5th Cir. 1987) (citing Erving and indicating that an arbitration clause that allowed one party to seek judicial injunction is not unconscionable); Torrance, 242 F. Supp. 2d at 872 (indicating that foreclosure claims permitted under an arbitration agreement are not unreasonable or oppressive because foreclosures "are heavily regulated by statute," which promotes efficiency and "effective protections for both sides"); Walther, 872 A.2d at 749 (stating that "foreclosure proceedings . . . do not act solely to protect the interests of the mortgage lender against a defaulting debtor but instead provide protections for both

---

[13] AAA Rule R-37(d) was submitted after oral argument in the Sellers' filing of supplemental authority. That rule provides:

> R-37. Interim Measures (a preliminary decision made by the arbitrator involving part or all of the issue(s) in dispute in the arbitration)
>
> (a) The arbitrator may grant whatever interim measures he or she decides are necessary, including granting an injunction and ordering that property be protected.
>
> (b) Such interim measures may take the form of an interim award, and the arbitrator may require a security payment for the costs of such measures.
>
> (c) When making a decision on an interim measure, the arbitratory may grant any remedy, relief, or outcome that the parties could have received in court.
>
> (d) *A party to an arbitration agreement under these [AAA] Rules may instead file in state or federal court for interim relief. Applying to the court for this type of relief, including temporary restraining orders, is consistent with the agreement to arbitrate and will not be considered a waiver of the right to arbitrate.*

AAA Rule R-37 (emphasis added).

sides"); Mansfield v. Vanderbilt Mortg. and Fin., Inc., 29 F. Supp. 3d 645, 656 (E.D.N.C. 2014) (noting that an exception for foreclosure proceedings is common and that arbitration is an impracticable forum for foreclosure proceedings); Lackey, 498 S.E.2d at 905 (recognizing that judicial foreclosure "provide[s] specific procedures for protection of collateral and the parties during the pendency of the proceedings" for both parties); State ex rel. Ocwen Loan Serv'g, LLC v. Webster, 752 S.E.2d 372, 396 (W. Va. 2013) ("foreclosure exception" in an arbitration agreement is "not only common" but is "quite necessary in order to effectuate foreclosure and a retaking of the subject property by lawful processes, where needed, without breach of the peace") (quoting Miller, 2006 WL 2571634, at *11)).  One court has commented that such a carve-out is "hardly surprising in that the foreclosure of mortgages is a uniquely judicial process." Delta Funding Corp. v. Harris, 912 A.2d 104, 115 (N.J. 2006).

We recognize that a provision that permits the Sellers to seek foreclosure in court might result in parallel proceedings, in court and in arbitration.  Such a "split-forum" effect results from the fact that any claim brought by the consumer in arbitration might track defenses asserted by the consumer in foreclosure proceedings.  While not optimal, this "split-forum effect can be viewed as an acceptable corollary to the general policy favoring arbitration of claims." Salley, 925 A.2d at 128.  On similar facts, one court explained:

> As [the defendant] argues, there is a facially apparent business justification for such an exception, as the safeguards thereby preserved assure regularity and consistency for the benefit of both lender and borrower, and accordingly, there are sound pragmatic and policy reasons why foreclosure proceedings should be pursued in a court of law.  While there is no question that the reservation facilitates the split-forum effect . . . , again, the federal and state consumer protection laws invoked by [the plaintiff] mitigate this burden for meritorious claims properly brought under their provisions. . . .  As such, the split-forum effect can be viewed as an acceptable corollary to the general policy favoring arbitration of claims.

Id. (citations omitted; footnote omitted); see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985) (indicating that, when some claims are arbitrable and others are not, "piecemeal" litigation in different fora is acceptable when necessary to enforce the parties' agreement to arbitrate).

Viewing the Arbitration Agreement in the context of the overall circumstances, we must conclude that it is not unconscionable.  While the Arbitration Agreement is contained in an adhesion contract and has some degree of non-mutuality in the parties' choice of forum, it is not nearly as "one-sided" as the arbitration agreement in Taylor.  Moreover, the Sellers

articulate a reasonable business justification for the carve-out for foreclosure proceedings on the manufactured home. Under these circumstances, the Arbitration Agreement is not unreasonably favorable to the Sellers or "beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." Taylor, 142 S.W.3d at 286. Accordingly, we reverse the holding of both the trial court and the Court of Appeals that the Arbitration Agreement is unconscionable and unenforceable.

Mr. Berent argues that, in the event that this Court finds that the Arbitration Agreement is not unconscionable under Taylor, his "allegation of fraud calls into question whether there is adequate consideration to support even a conscionable agreement." In essence, he asks us to remand the case to the trial court with instructions to address his allegations of fraud in the formation of the agreement to arbitrate. In response, the Sellers argue that Mr. Berent had the opportunity to submit evidence on fraud in the trial court but failed to do so. Consequently, the Sellers ask this Court to reverse and remand with instructions for the trial court to compel arbitration.

It is difficult to discern from this record whether, or to what extent, Mr. Berent had an opportunity in the trial court to argue or prove fraud in the formation of the agreement to arbitrate. Regardless, the trial court did not address Mr. Berent's allegations of fraud because it relied solely on Taylor in denying the Sellers' motion to compel arbitration. Moreover, any issue regarding fraud in the formation of the agreement to arbitrate is outside the scope of our grant of permission for this appeal. Therefore, we will leave it for the trial court on remand to determine whether or to what extent further proceedings should be conducted to address Mr. Berent's claims of fraud.

## CONCLUSION

The decision of the trial court is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion. Costs on appeal are taxed to Appellee Richard Berent, for which execution may issue if necessary.

_____
HOLLY KIRBY, JUSTICE